(February 1, 1892.)

## JACOBS v. SHENON.

### [29 Pac. 44.]

BROKERS' COMMISSIONS—ALLEGATIONS OF COMPLAINT—PROOF.—1. A broker claiming commissions upon an agreement which provides that the party of the first part offers to sell certain mining property at the price of $175,000, and to pay the parties of the second part $12,000 for services rendered in selling or placing said property, upon terms acceptable to the party of the first part, must allege in direct and positive terms that the party of the second part did render services which resulted in the sale thereof, or that he produced a party ready, willing and able to purchase said property upon the terms named, otherwise it is insufficient. The broker must follow such allegation with proof that such services were rendered by him, in order to recover.

WRITTEN CONTRACT MERGES ALL PRIOR AGREEMENTS RELATING TO THE MATTER.—2. A contract having been reduced to writing and signed by the parties, concluded all the parties thereto at the date thereof, and any contracts made between the same parties prior to that relating to the same subject matter, and all conversations and agreements of whatever kind had between them prior to that date, are by law conclusively presumed to be merged in the final contract.

SAME—AGREEMENTS PRIOR TO WRITTEN CONTRACT NOT PROPER CONSIDERATIONS FOR JURY.—3. No conversations or agreements had or made prior to that time, tending to vary or dispute the provisions of the writing, are proper considerations for the jury, and could not be given in evidence.

(Syllabus by the court.)

APPEAL from District Court, Alturas County.

R. P. Quarles, Texas Angel, and Smith & Smith, for Appellant.

One of two joint promisees may release the obligor of a contract, and, if by so doing he injures his co-obligee, his co-obligee must look to him for relief. (*Jacomb v. Harwood,* 2 Ves. Sr. 265; *Murray v. Blatchford,* 1 Wend. 583, 19 Am. Dec. 537; *Napier v. McLeod,* 9 Wend. 120; *Decker v. Livingston,* 15 Johns. 479; *Kimball v. Wilson,* 3 N. H. 96, 14 Am. Dec. 342; *Myrick v. Dame,* 9 Cush. 248.) Evidence of intention of the parties in making a written contract is inadmissible. (*Harrison v. McCormick,* 89 Cal. 327, 26 Pac. 830; *Nicholson v. Tarpey,* 89 Cal. 617, 23 Am. St. Rep. 469, 26 Pac. 1101.) The construction of the contract, it being in writing, was for the court, and to submit it to the jury was error. (*Monnett v. Monnett,* 46 Ohio St. 30, 17 N. E. 659; *Goddard v. Foster,* 17 Wall. 123; *Luckhart v. Ogden,* 30 Cal. 547.)

F. E. Ensign, for Respondent.

When a person, answerable in contract to two jointly, settles with one of these, so that one has no longer any interest in the matter in dispute, it is a severance of the cause of action, and the debtor is liable in an action at law to the other alone. (*Boston etc. R. Co. v. Portland etc. R. Co.,* 119 Mass. 498, 20 Am. Rep. 338; *Garrecht v. Taylor,* 1 Esp. Dig. 117; *Kirkman v.*

*Newstead,* 1 Esp. Dig. 117; *Austin v. Walsh,* 2 Mass. 401; *Baker v. Jewell,* 6 Mass. 460, 4 Am. Dec. 162; *Holland v. Weld,* 4 Me. (Greenl.) 255; *New Braintree v. Southworth,* 4 Gray, 304.) A release not under seal and without consideration is void. (*Benjamin v. McConnell,* 4 Gilm. 536, 46 Am. Dec. 474; *Crawford v. Millspaugh,* 13 Johns. 87; *Jackson v. Stackhouse,* 1 Cow. 122, 13 Am. Dec. 514.) When a contract is ambiguous, and the meaning doubtful, and requires oral evidence to explain it, the question of its meaning should be submitted to the jury. (*Ganson v. Madigan,* 15 Wis. 145, 82 Am. Dec. 659; *Bedard v. Bonville,* 57 Wis. 271, 15 N. W. 185; *Philibert v. Burch,* 4 Mo. App. 470; *Hueske v. Broussard,* 55 Tex. 201.)

MORGAN, J.—The plaintiff alleges that on the seventh day of June, 1889, the defendant entered into an agreement with E. S. Chase and William Tate Taylor, by which the said defendant agreed to and with said Chase and Taylor that he would pay them the sum of $12,000 for services rendered by said Chase and Taylor, in selling the property known as the "Shenon" group of mines, situated in Bannock mining district, in Beaverhead county, Montana, and placing the same in a manner acceptable to the said defendant; and said agreement further provided that the said sum should be paid to the said Chase and Taylor in the following manner, to wit: That, at each payment made to said defendant by the purchaser or purchasers of said mining property, said Chase and Taylor should be paid by the defendant their *pro rata* share thereof, until the whole of the said sum should be paid to them. That the said mining property, in the sale and placing of which said services were rendered by the said Chase and Taylor, has been sold, and the purchase money therefor has been paid to the said defendant, and that the whole amount of the said sum of $12,000 has become due and payable to the said Chase and Taylor, one-half thereof to each. That however it may appear upon its face, as a matter of fact, the said agreement is and was not a joint agreement, as the services rendered as the consideration of said agreement were rendered before the date of the agreement, or its execution by defendant, by said Chase

and Taylor, and were not performed jointly or in co-operation, and the amount due under said agreement to each of them, to wit, the sum of $6,000, was due for separate, distinct and independent services. That the said William Tate Taylor is now, and was at the commencement of this suit, a nonresident of this state, and a resident of the state of Montana, and has had, since the commencement of this action, no interest in said agreement; and that, prior to the commencement of this action, the amount due him under said contract had been paid by the said defendant. That on the first day of September, 1890, there was due to said E. S. Chase, from the said defendant, on said agreement, the sum of $6,000, after deducting therefrom the sum of thirty-five dollars, which sum of thirty-five dollars the plaintiff admits to have been paid by the said defendant to the said Chase, on said agreement, on the tenth day of August, 1889. That on the first day of September, 1890, the said E. S. Chase sold and assigned his interest in said agreement to the plaintiff. That no part of said $6,000 had been paid, except the sum of thirty-five dollars, as before stated; and there is now due thereon from the said defendant to plaintiff the sum of $5,963, and interest at the rate of ten per cent. Prays judgment for the above sum and interest.

To this complaint the defendant filed a demurrer alleging, among others, the following causes, to wit: 1. The complaint does not show or allege that E. S. Chase and William Tate Taylor had ever rendered any services in selling or placing the said property mentioned in the complaint, either before the date of the alleged agreement, or at any time; 2. It does not allege or show that the sale or placing of the property, alleged in said complaint to have been made, was made before the date of the alleged agreement, or in consequence of any services rendered by said Chase and Taylor; 3. It does not allege or show that the property was placed or sold in a manner acceptable to the defendant; 4. It does not state whether the alleged agreement was verbal or in writing. This demurrer was filed June 16, 1891. On the same day the defendant filed his answer, and admits that, on the seventh day of June, 1889, he entered into an agreement with the said Taylor and Chase, touching the sale

and placing by them of the mining property mentioned by them
in said complaint; but he denies that he agreed in said agree-
ment to pay the said Taylor and Chase the sum of $12,000, or
any other sum, in consideration of services rendered, prior to
said date, by them or either of them, in placing or selling the
said property, or any part thereof. Denies that said Chase and
Taylor, or either of them, had, on the said seventh day of
June, 1889, sold said property, or any part thereof, in any man-
ner. Avers that said agreement is a joint agreement. Denies
that the consideration for said agreement is or was services
rendered by said Taylor and Chase prior to the date of said
agreement, and denies, specifically, each of the allegations of the
complaint, except that he admits that said property has been
sold; but he denies that said property was sold by the said
Chase and Taylor, or either of them, or that they sold any
part of said property, or that they, or either of them, were
the procuring cause of said sale, and avers, upon information
and belief, that, prior to said sale, the said Chase, in bad faith
toward this defendant, used his influence trying to prevent said
sale by false and slanderous statements. That at the time of
the execution of said agreement it was distinctly understood
and agreed that said promise to pay said Chase and Taylor the
said sum of $12,000 was upon the condition that they, the
said Chase and Taylor, should place and sell the said min-
ing property at the price of $175,000, upon terms and in man-
ner as should be acceptable to defendant. That said considera-
tion for said promise has wholly failed. The answer contained
other alleged defenses not necessary to be here stated. On July
15th, the day the verdict was returned and the judgment ren-
dered, the plaintiff, by leave of the court, filed an amendment
to his amended complaint, alleging that the plaintiff, conspir-
ing with the said William Tate Taylor, induced the latter, in
order to defraud the said Chase, to sign a release to and for the
said defendant, of and from the indebtedness arising from said
contract, with the intention to wrong and defraud said Chase.
The demurrer to the complaint was overruled, and exception
taken by defendant. Trial was had before the court and a jury,

resulting in a verdict for the plaintiff and against the defend-ant for the sum of $5,107.86, and legal interest from the filing of the complaint. Judgment was entered on the said verdict on July 15, 1891. Defendant moved for a new trial, which being denied, an appeal was taken to this court.

The contract upon which this suit is brought was introduced in evidence, is in writing, and is as follows:

"This agreement made and entered into this seventh day of June, 1889, by and between Phil Shenon, of Beaverhead county, Montana territory, party of the first part, and William Tate Taylor and E. S. Chase, of said Beaverhead county, parties of the second part, witnesseth: "That the party of the first part offers to sell certain mining property and appurtenances in Bannock mining district, county and territory aforesaid, for the sum of $175,000; and of which amount said party of the first part agrees to pay said parties of the second part the sum of $12,000, in consideration of services rendered in selling and placing said property on such terms and conditions as may be accepted by said party of the first part. And it is further agreed by said parties hereto that the said sum of $12,000 shall be paid *pro rata,* as per purchase price, in cash, and stock, if the sale be made at such time as payments may be made on such sale to the party of the first part. Witnesseth our hands and seals day here first above written.

"WM. TATE TAYLOR.

"PHIL SHENON.

"E. S. CHASE."

It will be seen that the complaint contains no allegation that the said Chase and Taylor, or either of them, ever, at any time, rendered any services, in selling or placing the property described in the complaint; nor does it show that the property was sold or placed by reason of, or in consequence of, any services rendered by said Taylor and Chase, or either of them, at any time. The only allegation from which the court might infer that services had been rendered by the parties Chase and Taylor are the following words: "That the said mining prop-

erty, in the sale and placing of which the said services were
rendered," and again as follows: "Plaintiff alleges, on informa-
tion and belief, that, however it may appear upon its face, as
a matter of fact the said agreement is and was not a joint
agreement, as the services rendered as the consideration for said
agreement were rendered before the date of the agreement, or
its execution by defendant, by said Chase and Taylor, and were
not performed jointly or in co-operation; and the amount due
under said agreement to each of them, to wit, the sum of $6,000,
was due for separate, distinct and independent services." The
foregoing is not an allegation that services were rendered.
The allegation that said Chase and Taylor sold or placed
said mine for the price named, or were the procuring
cause of its being so sold or placed, must be direct, certain and
positive, and cannot be left to inference. No fact material to
recovery, as this is, can be left to inference. (1 Estee's
Pleading and Practice, sec. 196; *Moore v. Besse,* 30 Cal. 572.)
Without allegations of such services the complaint is fatally
defective. The demurrer thereto should have been sustained.

The contract, as above set forth, is plain, unambiguous, and
certain in its language—this agreement made by and between
Phil Shenon, party of the first part, and Taylor and Chase, par-
ties of the second part. The party of the first part offers to
sell, and agrees to pay to the said parties of the second part.
Whenever an obligation is undertaken by two or more, or a right
given to two or more, it is the presumption of law that it
is a joint obligation or right. Words of joinder are not neces-
sary, but words of severance are. (1 Parsons on Contracts, p.
11, c. 2, sec. 1.) The contract on the part of Chase and Tay-
lor, the parties of the second part, was joint. But it is alleged
in the complaint that, prior to the commencement of the ac-
tion, the amount due Taylor had been fully paid, and that he
had no interest in said contract at the time of the commence-
ment of the action. This gave Chase or his assignee the right
to sue in his own name. (Hawes on Parties, sec. 94, and cases
there cited.)

The contract was also to be performed *in futuro.* It states:
"The party of the first part offers to sell." The property had

not then been sold, and, so far as this contract is concerned,
it is the same as if it had never before been offered for sale.
It is, then, now offered for sale at the price of $175,000, and
the effect of the further provision is that if the said Chase and
Taylor shall succeed in selling and placing said property at
said price, and on such terms and conditions as may be ac-
cepted by said Shenon, the party of the first part, then said
defendant is to pay said Chase and Taylor the sum of $12,000,
in consideration of said services; and the converse would be
equally true, that if the said Chase and Taylor should not
succeed in selling and placing said property according to condi-
tions, nor in introducing or procuring parties who were ready
and willing and offered to pay such price, upon terms and con-
ditions that were acceptable, then nothing would be due them
under this contract.   This contract having been reduced to
writing, and signed by the parties on the seventh day of June,
1889, concluded all the parties thereto at that date; and any
contracts made between the parties prior to that date, relat-
ing to the subject matter, and all conversations and agreements
of whatever kind had between them prior to that date, are
by law conclusively presumed to be merged in this contract.
No conversations or agreements had or made before that time,
tending to dispute or vary the contract, were proper considera-
tions for the jury, and could not be given in evidence.   There
is no evidence in the record of any agreement or contract made
by the parties subsequent to the signing of this contract, vary-
ing the terms thereof.   It therefore stands unchanged.

The above construction of the contract, and the statement of
the law relating thereto, it seems to the court, clearly indicates
what is and what is not proper evidence.

Mrs. E. S. Chase was permitted to testify, over the objection
of defendant, that Mr. Taylor said it would make no differ-
ence when the mine was sold, or if it was to those parties or
some others; that the contract would still hold good, and that
it was for services rendered; presumably meaning that it would
make no difference whether the property was sold to parties
procured by Chase and Taylor, or to parties procured by others,

as the theory of the plaintiff was that the contract was given for services rendered before its making. This evidence was improper, and should have been excluded. One party to a contract cannot, in the absence of the other party, be permitted to give his own construction thereto, varying its terms, and have such construction go to the jury to affect their verdict. If received for the purpose of impeaching the testimony of Taylor, it was improper, as no foundation had been laid therefor. Mr. Taylor was not interrogated with reference to this conversation. The testimony shows that the property was not sold or placed by Taylor and Chase, or either of them, and that they, nor either of them, were the procuring cause of such sale. Taylor swears that he and Chase tried to sell the property, but failed. Again: "Failing to sell the property, I surrendered my copy of the agreement to Shenon." "Mr. Chase and myself tried to sell the property to Mr. E. Probert. Mr. Probert did not buy. We also offered it to William Beck and B. F. White, but failed to sell it." Mr. Chase proposed to bring a purchasing party from Hailey, Idaho, but no party came. And again, Taylor states: "We were to receive $12,000 in money and stock if we sold the property. If we did not sell the property we were to receive no compensation." These statements were reiterated upon cross-examination. Mr. Shenon, the defendant, testifies: "I never paid Mr. Chase anything on this contract. This credit of thirty-five dollars on the contract is not any credit of any payment of mine on the same." "I sold the mines mentioned in the contract, which plaintiff has sued on, to J. Stewart-Wallace through Messrs. Casey, Hammer & Huston, as my agents. Taylor did not have anything to do or assist in any way in this sale, nor did Mr. Chase assist in any way on this sale. At the time the contract of June 7th was entered into, they, Chase and Taylor, claimed to be in possession of a purchasing party who might purchase my property in the event of the Butte parties failing to do so. At that time there was a bond pending with the Butte parties, but there was no deal made until December 17, 1889. The Butte parties were represented by J. Stewart-Wallace, to whom I sold. I

sold the mining property for $150,000—$100,000 payable in money, and $50,000 payable in stock." Witness Chase claims that the services had been rendered which were the consideration for this contract, before the making of the contract; but the evidence shows that the negotiations for the sale were continued for six months after that time, and the sale was not consummated until December, 1889. It is not such a contract as would be made for services already rendered and completed, but is such a contract as would be agreed upon were the parties Chase and Taylor then undertaking to make the sale. The testimony of Taylor and Shenon that no services were rendered, either by Chase or Taylor, in the sale finally made by Casey, Hammer & Huston, is not contradicted by any testimony in the case, except Chase, and he does not claim that they or either of them did anything after the making of the contract of June 7, 1889.

As appears by this record, the court is forced to the conclusion that there is no evidence therein that would enable the plaintiff to recover. The issues in this case are pointedly laid down, and the law relating thereto briefly and clearly given, in Mechem on Agency, section 965. 1. What did the broker undertake to do? 2. Has he completed that undertaking within the time and upon the terms stipulated? 3. If not, is the default attributable to his own act, or to the interference of the principal? If, upon such an inquiry, it be determined that the broker has performed, within the time and upon the terms agreed upon, he is entitled to his commissions. If he has not, he is not so entitled, unless the performance was prevented by the principal, under circumstances which gave him no right the and so to prevent it. If particular terms and conditions ar stipulated for, the performance must be in accordance with those terms, and no performance upon other terms will suffice, unless accepted by the principal. It cannot be seriously contended that Chase and Taylor, or either of them, sold said property, or procured a purchaser ready, willing and able to purchase the same, at the price named in the contract, and upon terms that were acceptable to the defendant, or upon any terms.

We come now to the consideration of the instructions. The following instructions requested on the part of the plaintiff were given by the court, and excepted to by the defendant: "No. 3. The jury are instructed that, even if they should believe from the evidence that E. S. Chase and William Tate Taylor were copartners and joint owners in the contract sued on in this cause, a release by Taylor would not bind Chase if the jury believed, from the evidence, that the said Taylor was guilty of practicing a fraud upon Chase in executing the release, or executed the release in bad faith to Chase, or executed the release by a fraudulent connivance or collusion with Shenon, the defendant." There is no evidence in the record that Taylor practiced a fraud upon Chase, or executed the release in bad faith, nor of any fraudulent connivance with Shenon. Without evidence tending to prove fraud or bad faith the instruction is improper. Instructions must be based upon evidence. Instruction No. 4 is bad for the same reason. The same may be said of instruction No. 6. The instructions themselves are so similar to the one here commented upon they are not repeated. Instruction No. 5, requested by the defendant, is as follows: "I charge you, as a matter of law, that the contract, as introduced by the plaintiff in this case, being the contract sued upon, means that the said Chase and Taylor should earn their brokerage by actually selling and placing said group of mines, or being the procuring cause thereof, at the price mentioned in the contract, and upon the terms as to stock and money that the defendant should accept." The instruction is proper as written, without modification, but the court modified it as follows: "Unless you find that the rendition of the services claimed by Chase was to be paid for by the payment of $6,000." There is no evidence of any modification of the contract by the parties thereto after the contract was signed, and no understanding of any of the parties before the contract was signed can be permitted to prevail against the express terms of the writing; therefore this modification authorized the jury to consider, as evidence, testimony that was not proper. The modification was therefore error. The following clause in the

instructions given by the court, upon his own motion, was also excepted to by the defendant, to wit: "A number of letters and contracts have been introduced and read in your hearing, and are a part of the evidence in this case, and it becomes a part of your duty to analyze each and all of them; and, taken with the other evidence in the case, you are to determine who should recover in this case." This instruction placed before the jury, for their consideration, evidence of conversations occurring between the parties before the signing of the contract of June 7, 1889, and also contracts existing prior to the above date between them, all of which was improper for the reasons heretofore given. These errors must have prejudiced the defendant before the jury in the trial of this cause. The judgment of the court below is reversed, and a new trial granted, with costs awarded to appellant.

Sullivan, C. J., and Huston, J., concur.