(November 21, 1902.)

# TYSON v. NEILL.

[70 Pac. 790.]

Ejectment—Lease With Option to Purchase.—In an action of ejectment, where the evidence shows that defendant is rightfully in possession of the demanded premises under a lease, and option to purchase, the action must fail.

Contract — Collalateral, Oral Agreement — Evidence. — Where parties enter into a contract, reduce same to writing, and state the details therein, and it appears to be complete upon its face, the same cannot be defeated by showing a contemporaneous oral agreement not made after the execution of the contract, and there is no allegation of fraud or mistake in the procuring or execution of the contract.

(Syllabus by the court.)

APPEAL from District Court, Kootenai County.

The facts are stated in the opinion.

W. B. Heyburn & E. M. Heyburn, for Appellant.

The written agreement which is found in the answer does not appear to contain a single sentence, phrase or word that needs explanation, and the testimony in this case was not offered for the purpose of explaining the written contract, but to set up a collateral agreement. In the instructions the court uses the term "the contract" just as he used it in the former, evidently considering the written instrument and the alleged collateral agreement as constituting one contract. The subject is completely briefed in Greenleaf on Evidence, sections 275, 305. Respondents move to dismiss the appeal on the ground that the undertaking is not in compliance with the requirements of the statute, section 4809 of the Revised Statutes. The law governing this question may be said to be entirely settled by this court. There are three cases in point: *Kelly v. Leachman,* 5 Idaho, 521, 51 Pac. 407; *Weil v. Sutter,* 4 Idaho, 748, 44 Pac. 555; *Wallace v. McKinley,* 6 Idaho, 95, 53 Pac. 104.

Edwin McBee and W. T. Stoll, for Respondents.

A motion was made herein to dismiss the appeal. It was served on the twenty-fifth day of September, 1902, and at the same time a notice was given that it would be called for hearing upon the opening day of this court, to wit, on the morning of the sixth day of October, 1902. That motion is based upon the fact that two appeals were taken herein, to wit, one from the order overruling motion for a new trial, the other from the judgment, and but one undertaking is given in support of both such appeals, which undertaking does not refer to which appeal it pertains, or in support of which it is given, nor does it provide for the payment of costs of either one, or more than one of said appeals. This court has decided by an unanimous line of decisions that such an undertaking is insufficient for any purpose. (See *Kelly v. Leachman,* 5 Idaho, 521, 51 Pac. 407; *Wallace v. McKinley,* 6 Idaho, 95, 53 Pac. 104.) Our contention is, that the action of ejectment is properly brought. (*Burnett v. Caldwell,* 9 Wall. 290.) The rule seems to have been recognized by this court in *Stockton v. Herron,* 3 Idaho, 581, 32 Pac. 257. A careful examination of the contract will demonstrate that the appellant was not required, under that contract, to do anything within any time. He might sit down and wait an indefinite time without performing or attempting to perform his contract, and no breach could be claimed by respondents, and no suit could be brought for damages. The amount provided to be paid, $6,000, might, according to the terms of that contract, never become due. That contracts lacks the element of mutuality, and for that reason is void. It is unreasonable and unfair, and for those reasons it is void. A case very much in point was passed upon by the supreme court of Michigan—*Davie v. Lumberman's Min. Co.,* 93 Mich. 491, 53 N. W. 625. (*Cummer v. Butts,* 40 Mich. 322, 29 Am. Rep. 530.) This court had occasion to pass upon a somewhat similar question in *Stockton v. Herron, supra,* also in *Bear Track Min. Co. v. Clark,* 6 Idaho, 196, 54 Pac. 1007.

QUARLES, C. J.—This action was commenced by the respondents to recover in ejectment certain mining claims and damages. The defense set up in the answer is that defendants were in possession of said mining claims under a contract of purchase, which, upon inspection, appears to be a lease with an option to purchase. The purchase price mentioned in said contract is the sum of $6,000, and was to be paid under the terms of said contract, as expressly provided therein, as follows: "All the net earnings, after working expenses are paid for —and by 'net earnings' is meant all the gold that is taken out of the said Gold Nugget and Sixteen to One placer claims, after the men who are employed to work it properly are paid for their services, and the tools and all necessary supplies are paid for out of the gold taken out of the above-mentioned claims, then the said parties of the first part are to receive as their pay the remainder till the said six thousand dollars ($6,000) is all and fully paid, and when the said six thousand dollars ($6,000) is fully paid it is mutually agreed between the said parties of the first part and the said parties of the second part thereto that the above-mentioned parties of the second part, their heirs and assigns, shall have all the gold taken out of said Sixteen to One and Gold Nugget placer mining claims, and have a full and complete title in and to said claims inasmuch as it is in the right and power of the parties of the first part to convey title to the said Gold Nugget and Sixteen to One placer mining claims. It is further agreed to by the parties hereto that the parties of the second part can at once go onto and enter into possession of said Gold Nugget and Sixteen to One placer mining claims, and put in sluice boxes and all necessary machinery and apparatus to open up and properly develop said Gold Nugget and Sixteen to One placer mining claims. It is further agreed that the parties of the first part have at all timely hours the privilege to enter into the diggings to prospect and pan, and be present at the time of cleaning up any and all gold that may be found in the working of the said Gold Nugget and Sixteen to One placer mining claims till the terms of this agreement are fully complied with. It is

further mutually agreed between the first and second parties that in the payment of the aforesaid six thousand dollars ($6,000) golddust will be taken at twenty dollars ($20) per ounce, but it is understood that it must be good, clean, merchantable gold. It is further mutually agreed to by the parties hereto that the parties of the second part are to be responsible for all expenses that may be incurred in the working of the said Gold Nugget and Sixteen to One claims, and that none of the parties of the first part shall be held liable for expenses or indebtedness in connection with the working of the said Gold Nugget and Sixteen to One claims. It is further agreed to by and between the parties hereto that the work is to be done in a workmanlike manner, and to best advantage, which is to mean to get the most gold with the least expense in connection therewith, thereby making the net profit the greatest that can be made under the circumstances and surrounding conditions." The cause coming on for trial before the court and a jury to avoid the effect of said contract, the plaintiffs (respondents here) were permitted by the court, over the objection of the appellant, to offer testimony tending to prove that at the time of making the said contract the appellant promised to pay respondents the sum of sixty dollars per week, whether that amount of golddust was taken from the ground or not. Said plaintiffs (respondents here) were permitted to prove such oral contract by the testimony of two witnesses who were plaintiffs in said action. To such oral testimony the appellant duly objected, and duly excepted to the action of the court in permitting the same. The jury found a verdict in favor of the plaintiffs (respondents here) for the sum of $2,500.

In our view of this case, the appellant was rightfully in possession of said mining ground under the terms and conditions of said written agreement, and this action in ejectment would, therefore, fail. The verdict of the jury was evidently based upon the testimony tending to show the collateral oral agreement claimed by the plaintiffs (respondents here) to have been made at the time of the execution of said written contract. Upon no other hypothesis could said verdict be accounted for.

The admission of this testimony was error. Said testimony was incompetent. The parties having deliberately made and entered into a contract and reduced it to writing, oral testimony tending to prove that contemporaneously with the making of such contract another and different understanding was had orally, contradicting and varying the terms of the written contract, was inadmissible. The law presumes that the entire contract was reduced to writing, and that all conversations between the parties relating to the subject matter thereof and all of the agreements and conditions were incorporated into said written contract. See *Jacobs v. Shenon,* 3 Idaho, 274, 29 Pac. 44, where it is said: "This contract having been reduced to writing and signed by the parties on the seventh day of June, 1889, concluded all the parties thereto at that date; and any contracts made between the parties prior to that date relating to the subject matter, and all conversations and agreements of whatever kind had between them prior to that date, are by law conclusively presumed to be merged in this contract. No conversations or agreements had or made before that time tending to dispute or vary the contract were proper considerations for the jury, and could not be given in evidence. There is no evidence in the record of any agreement or contract made by the parties subsequent to the signing of this contract varying the terms thereof. It therefore stands unchanged." In the case at bar the evidence tending to prove said oral agreement simply shows that at the time of making the contract the appellant agreed to pay them sixty dollars per week, whether that amount was taken out of the ground or not. It is not claimed that this agreement was made subsequent to the signing of said contract. If that was the agreement between the parties, it should have been incorporated into the contract. The contract is not attacked on the ground of fraud, and it is not claimed that through mistake or inadvertence of the parties any material portion thereof was left out in reducing the contract to writing, and it appears on its face to be full and complete; hence we must regard the said contract as containing the entire agreement between the parties. It was upon this error that the

Points decided.

plaintiffs succeeded in obtaining a verdict. This evidence was not within the issues made by the pleadings.

For the foregoing reasons the judgment must be reversed, and the cause remanded for further proceedings consistent with the views herein expressed; and it is so ordered. Costs awarded to appellant.

Sullivan and Stockslager, J., concur.