# CASES ARGUED AND DETERMINED

## IN THE

# SUPREME COURT

### OF THE

# STATE OF IDAHO.

---

(March 11, 1910.)

IDAHO FRUIT LAND CO., LTD., Appellant, v. GREAT WESTERN BEET SUGAR CO. and ELMORE COUNTY IRRIGATED FARMS ASSOCIATION, Respondents.

[107 Pac. 989.]

WRITTEN CONTRACT—BEST EVIDENCE—PRE-CONTRACT STATEMENTS—PERPETUAL WATER RIGHTS—RIGHTS OF WATER USER—SUFFICIENCY OF EVIDENCE.

(Syllabus by the court.)

1. It was not error for the trial court to sustain a motion to strike out evidence of the contents, character and nature of a written contract, where the contract itself was not produced and it appeared that it was in existence and could have been produced. The writing itself was the best evidence of its contents and the rights conferred thereunder.

2. A prospectus containing statements as to the character and nature of contracts proposed to be made and entered into by the company issuing the prospectus, standing alone, is not sufficient upon which to found a cause of action. Where the action is based on a written contract entered into in pursuance of the statements contained in such prospectus, the presumption is that the entire contract was embodied in the writing.

3. A purchase of a perpetual water right from an irrigation company, with the right to receive the water so purchased from the company's canal, carries with it such a right in the appropriation itself and such an easement or servitude in the canal system as to authorize and enable the purchaser himself to go upon the property and protect the appropriation and maintain the diversion, and repair the canal, and carry the water through the

canal system to the extent of the purchaser's water right, in the event the company fails, neglects or refuses to do so.

4. A legal distinction exists and should be maintained between the absolute fee, title and ownership of property itself and. those contractual rights which arise out of mutual consent and give a contracting party certain claims, easements or servitudes in and to the property, and which by their very nature impress themselves upon the property itself, either for a time or perpetually.

5. Evidence in this case examined, and *held* sufficient to support the findings and judgment.

APPEAL from the District Court of the Fourth Judicial District, in and for the County of Elmore. Hon. E. A. Walters, Judge.

Action by plaintiff praying for a decree adjudging it, together with a number of individuals in whose behalf. it sues, to be the legal owners of the irrigation system described in the complaint. Judgment for the defendants; and the plaintiff appeals. *Affirmed.*

J. G. Watts, and Wyman & Wyman, for Appellant.

This court has held that where the consideration has been paid, the contract may be enforced independent of a written contract. (*Deeds v. Stephens,* 8 Ida. 514, 69 Pac. 534; *Stowell v. Tucker,* 7 Ida. 312, 62 Pac. 1033; *Barton v. Dunlap,* 8 Ida. 82, 66 Pac. 832; Rev. Codes, sec. 6008.)

A perpetual water right is more than a mere right to the use of water; it is a grant of an interest in the original appropriation, and an easement through the reservoir and canals built to store and conduct it to lands where it is to be used.

In nearly every adjudicated case, the courts have held that the consumer's interest is a real property interest. (*Stanislaus Water Co. v. Bachman,* 152 Cal. 716, 93 Pac. 858, 15 L. R. A., N. S., 359; *Wyatt v. Larimer & Weld Irr. Co.,* 18 Colo. 298, 36 Am. St. 280, 33 Pac. 144; *Gould v. Maricopa Canal Co.* (Ariz.), 76 Pac. 598; *Salt River Valley Canal Co. v. Nelsen,* 10 Ariz. 9, 85 Pac. 117, 12 L. R. A., N. S., 711; Wiel on Water Rights, 2d ed., p. 641; *Knowles v. New Sweden Irr. Dist.,* 16 Ida. 217, 101 Pac. 81.)

.E. M. Wolfe, for Respondent, Elmore County Irrigated Farms Assn.

This court has frequently held that the company which supplies the water user is the appropriator of the water while he is the user of the water. The appropriation belongs to the water company; the right to use that appropriation belongs to the water user.

The obligations of the company are fixed by the constitution and the statutes of this state, and are entirely distinct from the obligations and rights of the water user.

The duty of the corporation is a public or quasi-public duty. The right and duty of the water user is a private right and personal duty. The corporation cannot shift it or avoid its duty without forfeiture of its franchise. (*Wilterding v. Green*, 4 Ida. 73, 45 Pac. 134; *Farmers' etc. Co. v. Riverside etc. Irr. Dist.*, 14 Ida. 450, 94 Pac. 761; *Knowles v. New Sweden Irr. Dist.*, 16 Ida. 217, 101 Pac. 81, and cases cited in these decisions.)

W. C. Howie, and Cavanah & Blake, for Respondent, the Great Western Beet Sugar Company.

It has been universally held that the payment of the consideration alone upon an oral contract for an interest in lands is not sufficient part performance to take it out of the statute of frauds. (20 Cyc. P. & P. (N. Y.) 783; *Cooley v. Lobdell,.* 153 N. Y. 596, 47 N. E. 783; *Goddard v. Donaha,* 42 Kan. 754, 22 Pac. 708.)

AILSHIE, J.—This action was instituted by the appellant, the Idaho Fruit Land Co., Ltd., for itself as the owner of a tract of land and on behalf of "about 300 who own lands aggregating in all about 40,000 acres . . . . in Elmore county, Idaho," alleging "that all of the owners of said lands are owners of water rights entitling them to the use of water from the irrigation system hereinafter described, and are the joint owners of said system, and that this plaintiff sues in his own behalf and in behalf of owners of all of said lands and water

rights and of said irrigation system." The plaintiff prayed for a decree declaring the irrigation system described in the complaint to be the property of the plaintiff, and other parties in whose behalf plaintiff prosecuted the action, and further decreeing that the Great Western Beet Sugar Company, one of the respondents herein, has no further interest in the property or irrigation system. The complaint also asks for the appointment of a receiver, *pendente lite,* to take charge of, and repair and operate the irrigation system during the pendency of the action. A receiver was accordingly appointed, and an appeal was taken from the action of the trial court in making such appointment, and the action of the lower court was affirmed by this court. (*Idaho Fruit Land Co. v. Great Western Beet Sugar Co.,* 17 Ida. 273, 105 Pac. 562.) The case was subsequently tried on its merits, and findings and judgment were made and entered in favor of the defendants and denying the plaintiff the relief demanded. This appeal is from the judgment.

The brief of appellant contains no assignment or specification of errors, and we are accordingly left to an examination of the arguments and the record in the case without anything very definite as to a specific error upon which appellant assails the judgment or relies for a reversal thereof. We shall consider the matters, however, that are dealt with in the brief and argument of appellant.

The appellant alleged, and now contends, that it has proven that its contract and the contracts of all the other water users under the Great Western Beet Sugar Co.'s canal provided in terms that when the system should be completed and all the water rights sold and paid for that the system was capable of supplying, the canal, reservoirs and entire property should at once become the property of the water right holders. It also insists that the system has been completed so far as the Great Western Beet Sugar Co. is able to complete it, and that the company is now insolvent and unable to proceed further or meet its outstanding obligations, and that it has sold water rights far in excess of the capacity of the system, and that in addition to becoming hopelessly insolvent it has lost all fur-

ther interest in maintaining, improving or operating the system.

The appellant also maintains, as a second proposition, that the Great Western Beet Sugar Co., which we shall hereafter designate as the "Great Western," has sold perpetual water rights, and that such a water right is more than a mere right to the use of the water but amounts to a grant of an interest in the original appropriation and irrigation system, and that the moment the Great Western has sold such rights in excess of the capacity of its irrigation system the entire system at once became the property of the purchasers of such perpetual water rights. When the plaintiff in the lower court undertook to prove its right in this property and the rights of the 300 water users, in whose behalf it claims to have instituted this action, it did not introduce or offer to introduce its deed or contract in evidence, nor did it introduce or offer to introduce the deed or contract held by any water user which had been entered into between the water user and the Great Western. In course of the trial, however, the plaintiff attempted to prove by water right claimants the nature and character of their contracts with the Great Western. The court at first overruled objections to this class of evidence, but on cross-examination it developed that their contracts or deeds were all in writing, and the objections were thereupon renewed and motions were made to strike the evidence as to the nature and contents of the contracts from the record on the ground, first, that a water right is real property and must be conveyed by deed, and, second, that the deeds or writings themselves were the best evidence and that secondary evidence thereof should not be admitted. These motions were sustained. The ruling of the court was clearly correct.

In our judgment, as we view the whole record in this case, the final decision of the trial court turned upon the fact that there was no competent evidence in the case to show just what the plaintiff's contract was or what rights it has acquired in this canal system, or the waters therefrom, by reason and virtue of its contract with the Great Western. It clearly appears that the contracts upon which the plaintiff sought to

recover had been reduced to writing, and they were consequently the best evidence of the extent, terms and nature of the contract. They appear to have been deeds to perpetual water rights for which each land owner had paid a large sum, and judging from the nature of the evidence and the arguments in the briefs we infer that those deeds specifically provided that the land owner should never be required to pay any water rates for the use of water from this canal system, and that the only charge to which they should ever be subjected would be that of meeting their proportionate share of the maintenance expense. This is inference, however, and is not established by any legitimate evidence in the case. Counsel for appellant seems to have insisted in the lower court, and so insists here, that he was ''not trying the right of individual users.'' It was stated by counsel in the lower court that, ''the phase we are trying now of the contract is community interest. This system never did belong to the Great Western Beet Sugar Co.'' And so it is contended here, by counsel, that the question he has been litigating and is now presenting to the court is ''a community interest of the water right holders and not the individual rights, as evidenced by each one's deed to the water right to irrigate his own particular land.'' This proposition is rather vague and obscure. If it is proposed to show a community interest and recover on that theory, that interest must necessarily be limited to those who have in some manner contracted with the company, or else who have by reason of being members of the community acquired by operation of law some interest in the property. But it is not argued by counsel for appellant that the plaintiff and the parties for whom it sues are interested in this water system merely by reason of being members of the community at large, but rather by reason of having a contractual relation with the Great Western. In support of this position, counsel introduced in evidence a prospectus issued by the Great Western prior to the sale of any of these water rights in which it is stated:

''The Great Western Beet Sugar Company sells perpetual water rights to land under completed ditches at from $20.00

to $30.00 per acre and the best of land is to be obtained within a radius of from four to ten miles of Mountain Home. Good terms of payments are made by the company for perpetual water rights. When a settler purchases a perpetual water right as above stated there are no further fixed charges for maintenance made by the company, for when the canals are completed and all the water rights have been sold, the entire reservoir and canal system then becomes the property of the actual settlers and will afterward be operated by the water users. A perpetual water right carries with it the right to demand and receive annually, perpetually and continuously, during the irrigation season, a sufficient amount of water to keep the said land properly irrigated.''

This statement constituted a representation on the part of the Great Western as to the contracts it proposed to enter into with water users, but it was not a contract and, standing alone, cannot afford a basis for this action. The prospective water users, moved by the statements and representations contained in this prospectus, sought contracts with the company that made these statements, and entered into contracts in writing, and their rights under the contracts so made must be measured by the contracts themselves. It must be remembered in this connection that this is an action based on contracts, and does not pretend to be founded on fraud. It is not claimed that there was any fraud in the making of the contracts. Whatever previous material representations or agreements may have been made between the contracting parties are presumed to have been embodied in the final written contract. (*Jacobs v. Shenon*, 3 Ida. 274, 29 Pac. 44; *Tyson v. Neill*, 8 Ida. 607, 70 Pac. 790.) In order, therefore, for the court to construe the contract and properly determine the rights of the parties under its terms and import, it is necessary for the contract to be before the court or its contents to be disclosed in a proper and legal manner. This evidence was followed by the introduction of a petition in insolvency filed by the Great Western in which it admitted the existence of these water contracts, and that contracts had been sold to the full capacity of the canal and that the system is no longer

a practical asset of the company as a means of raising revenue or deriving profit. This, however, does not relieve the situation as to the contracts themselves.

So far as the ultimate rights and advantages of the water users are concerned, it seems to us that it will make very little difference whether they be adjudged to own the absolute fee and title to this irrigation system, or be left to rely upon the rights and privileges they acquire under their contracts for perpetual water rights. In either event, they are individually liable for their *pro rata* share of maintenance expense for keeping the system in repair and delivering water. On the other hand, their perpetual water rights give them such an interest in the irrigation system, the ditches, canals, reservoirs and water rights as to enable them to go upon the property and maintain the same and keep it in repair and deliver the water to which they are respectively entitled in the event the company fails or neglects to do so. In a case like this where there are several hundred interested parties, it will be necessary for them to act jointly or through a properly constituted or appointed agent or representative.

This court recently had occasion to consider the rights of a water user who had purchased a perpetual water right from a canal company. (*Nampa & Meridian Irr. Dist. v. Gess,* 17 Ida. 552, 106 Pac. 993.) After supposing the case of a canal owner or ditch company that had sold water rights to the extent of the full capacity of the canal, the court said:

"In such event he would no longer be interested in keeping up the canal or delivering the water, and yet if all the purchasers should construe their conveyances the same as the respondent here construes his deed, there would be no one to keep the canal in repair and bear the expense of maintenance and delivery of water. On the other hand, we have no doubt but that Rossi acquired his right and interest in the appropriation of the volume of water from the Boise river which was carried through the Ridenbaugh canal and that he might, at any time the majority owners of the canal failed or neglected to protect the appropriation and keep the canal in repair, go himself upon the property, protect the appropriation,

and maintain the diversion and carry the water through the canal to the extent of the quantity necessary for the irrigation of his tract of land.'' For authorities indicating a similar view, see *Knowles v. New Sweden Irr. Dist.,* 16 Ida. 217, 101 Pac. 81 (original opinion); *Hard v. Boise City Irr. & Land Co.,* 9 Ida. 589, 76 Pac. 331, 65 L. R. A. 407; Wiel on Water Rights, 2d ed., p. 641.

On the record before us and the state of facts it discloses, we would not be justified in considering or passing on the question of the appellant's ultimate rights in the irrigation system, constructed and operated by the Great Western. We are not unmindful of the distinction, as a legal proposition, that should and must be recognized and maintained between the absolute title and ownership of property itself and those contractual rights which arise out of mutual consent and give a contracting party certain privileges, easements or servitudes in and to the property of another, and which by their very nature impress themselves upon the property, either for a time or perpetually. In some cases, and this may be one of such cases, the practical and working effect may be and amount to the same whether the right be one or the other as above indicated.

The rights claimed by plaintiff against the Elmore County Irrigated Farms Association are founded not upon contract direct with that company, but by reason of the contracts with the Great Western, which latter company held a lease or contract from the Irrigated Farms Association. A different question arises in the issue thus presented, but requires no consideration here for the reason there is no recovery against the Great Western with which the contract was made.

In this case we think the condition of the pleadings worthy of note. The plaintiff does not disclose the names of all the claimants in whose behalf it sues, nor does it describe all the lands it is claimed are involved in and affected by this so-called community of interest. It must be apparent upon a moment's reflection that a decree quieting titles in these several claimants should designate the several parties interested and the extent of such interest so that a decree, if obtained

· as prayed, may vest the legal title in the true owners to the extent only to which each is entitled; and thus prevent future litigation among the parties themselves in order to determine the extent of the right of each. It would be difficult for a decree to run in favor of undisclosed plaintiffs. It is apparent that the decree in this case in no way adjudicates the rights of the parties under their contracts with the Great Western for perpetual water rights or whatever those contracts may cover. The trial court, not having those contracts before it, could not make findings or enter any decree determining or adjudicating any rights under them. Anything in the decree entered in this case which might be so construed · should be disregarded, and must be treated as modified to that · extent.

For the reasons hereinbefore stated, the judgment must be ∴affirmed, except as to the modification above indicated, and ∴it is so ordered. Costs in favor of respondents.

Stewart, J., concurs.

SULLIVAN, C. J., Concurring.—I concur in the conclusion reached but I do not think that the rule of law laid down in the second subdivision of the syllabus has any application to this case, for the reason that this case is not based upon the water deed referred to in said syllabus as the written contract. From the allegations of the complaint it clearly appears that the action is not based entirely upon a water right deed, but upon the contract of the Great Western Co., to the effect that when it had sold the water rights to the extent of the appropriation and capacity of its system and the system was completed and paid for, it should become the property of those who had purchased such water rights, the giving of the water deed being only a part performance of the contract and not the contract itself, but only a part of it. Hence the action was not based upon the deed for the water right. The prospectus was only a part of the evidence offered in support of the allegations of the complaint, as numerous agents of the Great Western Co. who sold water rights for it

testified that the sales were made upon the condition that when the water rights were all sold, the purchasers of such rights should become the absolute owners of the reservoir and water system.