[Sac. No. 2724. Department Two.—February 17, 1919.]

A. A. MERKELEY et al., Copartners, etc., Appellants, v. KATHERINE B. FISK et al., Respondents.

CONTRACTS—SEPARATE INSTRUMENTS—CONSTRUCTION OF AS ONE—RULE. It is the general rule that two or more separately executed instruments may be considered and construed as one contract only when upon their face they deal with the same subject matter and are by reference to one another so connected that they may be fairly said to be interdependent; but this rule is not so rigid as to be absolutely unyielding in the face of a suggestion contained in the writing itself that it is not complete, or of circumstances which call for the application of a well-defined exception to the rule that a contract may be explained by reference to the circumstances under which it was made and the matter to which it relates.

ID.—SALE OF REAL ESTATE — BROKER'S COMMISSION—PLEADING—INSUFFICIENT COMPLAINT.—In an action to recover a commission for the alleged sale of real estate, an allegation in the complaint that

plaintiffs had found and procured a purchaser for the land described will not suffice as an averment that the purchaser was ready, able, and willing to pay the amount designated, and upon the terms specified in the contract, and that allegation is not effectively aided by another and later allegation that plaintiffs immediately notified defendants that plaintiffs had found and procured a purchaser who was ready, able, and willing to purchase the land and pay the purchase price to defendants.

ID.—PROCURING PURCHASER FOR AGREED TERMS—PLEADING.—A broker's contract for the sale of real estate is not performed, nor is his commission earned, until it affirmatively appears that he has procured a purchaser ready, able, and willing to buy the property offered for sale upon the terms and at the price fixed by the contract, and this should be alleged in the complaint.

ID.—PURCHASE PRICE — UNCERTAINTY IN—ALLEGATION OF AMOUNT.—In an action to recover a commission for the sale of real estate, although the contract does not in terms disclose the precise price for which defendant's interest in the property was authorized to be sold, and is so uncertain as to require extrinsic evidence to show the amount, this is presumably within the knowledge of the plaintiffs, and it is incumbent upon them by appropriate averments to plead the price paid and then allege that was the price which the purchaser agreed to pay.

ID.—PLEADING—PERFORMANCE—PREVENTION OF PERFORMANCE—NECESSARY ALLEGATIONS.—In an action to recover a commission for the sale of real estate, whether the complaint be considered as proceeding upon a cause of action on the one hand for commissions earned and on the other hand for damages to the extent of such commissions because of the alleged prevention of performance, it fails in either event to state a cause of action where it does not allege that plaintiffs did, within the time limited by the agency contract, either before or subsequent to its revocation, procure or could have procured a purchaser ready, able, and willing to purchase for the price and upon the terms stated in the contract.

APPEAL from a judgment of the Superior Court of Sacramento County. Peter J. Shields, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. E. McLaughlin and C. P. McLaughlin, for Appellants.

Dunn & Brand, for Respondents.

LENNON, J.—In this action to recover a commission of $3,227.55 for the alleged sale of real estate the plaintiffs' cause of action arises out of the execution by and between the plaintiffs and defendants of two written agreements. The first one executed and dated November 19, 1913, is as follows:

"This agreement, made this 19th day of November, 1913, between Katherine B. Fisk, Emma T. L. Beardslee, and Ovedia A. White, as executrices of the last will and testament, and of the estate of W. E. Lovdal, deceased, the parties of the first part, and Merkeley, Chittenden & Keller, a co-partnership, the parties of the second part:

"Witnesseth:

"That the last will and testament of said W. E. Lovdal, deceased, gives the executrices authority to sell property of the estate at private sale but subject however to confirmation by the Superior Court of the County of Sacramento, State of California, and,

"Whereas the estate of W. E. Lovdal, deceased, is the owner of an undivided one-half interest in 661.1 acres or thereabouts standing in the name of T. T. C. Gregory and said T. T. C. Gregory is the owner of the other undivided one-half, subject however, to trust deed to said land executed by said Gregory to certain trustees to secure payment of the balance of the purchase price to George Swanston, and

"Whereas the estate of W. E. Lovdal, deceased, is the owner of an undivided one-half interest in a number of contracts for the purchase on the installment plan of certain lands in Reclamation District No. 785 in Yolo County, California, which contracts are executed, four signed by C. M. Goethe, one signed by H. J. Goethe, one signed L. M. Goethe and two signed by H. T. Goethe, said contracts covering about 619.315 acres, and

"Whereas the said estate of W. E. Lovdal owns a one-half interest in 2.42 acres in Colony A, Goethe subdivision, which said deceased purchased from Guy Foley, and

"Whereas the estate is willing to sell its said interest in said property for the amount that the said parties of the first part as executrices of said estate have paid upon the same which are as follows:

"Goethe Lands.

| Acre-age. | Con-tract. | Purchase Price. | Payments. | Interest. | Taxes. | Imp's. |
|---|---|---|---|---|---|---|
| 24.475 | 1 | $7340.00 | $2060.00 | $158.40) | | $494.00 |
| 9.23 | 2 | 2772.00 | 772.00 | 60.00– | $91.50 | |
| 21.1 | 3 | 7130.00 | 1994.00 | 154.08) | on 1–2 & 3 | |
| 2.42 | | This piece goes with C. M. G. | | | | |
| | | 'Colony A' Contracts 1–2–3. | | | | 1000.00 |
| 146. | 4 | 36500.00 | 10950.00 | 3561.13 | 236.00 | 285.00 |
| 51.94 | 5 | 12985.00 | 3895.50 | 1272.38 | 88.30 | |
| 284.33 | 6 | 71082.50 | 21324.75 | 7017.08 | 528.16 | 1640.00 |
| 70.24 | 7 | 17560.00 | 5268.00 | 1733.79 | 109.75 | |
| 12.00 | 8 | 3000.00 | 900.00 | 296.00 | 24.97 | 2570.00 |

Swanston Land.

| | | | | | | |
|---|---|---|---|---|---|---|
| 661.1 | 9 | 165280.00 | 48820.00 | 13282.00 | 1238.14 | 1211.00 |

Summary.

| | | | Full Amt. | One-half Int. |
|---|---|---|---|---|
| Goethe Land Contracts 1–2–3. 54.805 | acres | | $5783.92) C. M. G. Colony A | |
| | 2.42 | acres | 1000.00) | $2941.99 |
| Goethe Land Contract 4....146.00 | acres | | 15032.13 | 7516.06 |
| Goethe Land Contract 5.... 51.94 | acres | | 5266.18 | 2628.09 |
| Goethe Land Contract 6....284.33 | acres | | 30509.99 | 15254.995 |
| Goethe Land Contract 7.... 70.24 | acres | | 7111.54 | 3555.77 |
| Goethe Land Contract 8.... 12.00 | acres | | 3780.97 | 1895.49 |
| Swanston Land Contract 9..661.1 | acres | | 64551.14 | 32275.57 |

"Whereas the parties of the second part are anxious to sell said property for first parties upon commission of five per cent of the selling price or such lesser amount as they may accept.

"Now Therefore the parties of the first part hereby authorize the parties of the second part to sell the estate's interest in any of the above described contracts for the amount that first parties or said estate has paid on said contract or contracts, plus the amount of the commissions charged by second party for making such sale and that this contract shall be in full force for the period of sixty days from the date hereof and to remain in full force and effect thereafter until the expiration of ten days' notice, which notice shall be served in writing upon said second parties, and if at any time during the continuance of this contract the parties of the first part shall have an opportunity to sell said contracts, or any of them, the party of the first part shall have the right to sell this property upon giving the party of the second part

ten days' notice in writing that they have an opportunity to sell the property and unless second parties make a valid sale within said ten days this contract shall expire at end of said ten days and first party can then sell the property.

"It is understood however that any sale of said property will be reported by first parties to the Superior Court of the County of Sacramento, State of California, for confirmation and it is not binding unless confirmed by said court.

"In case of sale first parties are to furnish abstract of title to property to date.   (Showing clear title.)

"It is further understood and agreed that the purchaser shall, and will, hold first parties and the estate of Wm. E. Lovdal, deceased, free and harmless from all liability on said contracts.

"Witness the signatures of the first parties as executrices as aforesaid the day and year first above written.

"EMMA T. L. BEARDSLEE,

"Executrix.

"OVEDIA A. WHITE,

"Executrix.

"KATHERINE B. FISK,

"Executrix."

The second memorandum of agreement, dated and executed December 12, 1913, is as follows:

"In consideration of the sum of one hundred ($100.00) dollars the receipt of which is hereby acknowledged, the undersigned hereby agree to accept the payment of the amount due upon the purchase of the real property hereinbefore described as the Swanston land upon the following terms:

"Five thousand ($5,000) dollars upon the delivery of a good and sufficient conveyance of the title of said land;

"Seven thousand ($7,000) dollars six (6) months from that date;

"One-half the balance one (1) year thereafter, and the remaining one-half one (1) year from the date of the last mentioned payment.

"Notes to bear interest at six (6%) per cent and to be secured by a mortgage upon said property, subject to the trust deed now existing on said property in favor of C. F. Dillman and F. H. Pierce.

"Also subject to existing leases and leases heretofore agreed upon with lessees.

"OVEDIA A. WHITE.
"EMMA T. L. BEARDSLEE.
"KATHERINE B. FISK.

"December· 12, 1913."

In addition to setting forth the foregoing agreements *in haec verba* the plaintiffs' complaint alleged that the second memorandum was by the defendants executed and delivered to the plaintiffs as "a modification and addition to said agreement entered into November 19, 1913." Further, in support of the cause of action relied upon the plaintiffs' complaint alleged that on or about the twelfth day of December, 1913, "the plaintiffs found and procured a purchaser for the land described in said 'Exhibit A' (the first memorandum) described as follows:

"An undivided one-half interest in 661.1 acres or thereabouts standing in the name of T. T. C. Gregory and said T. T. C. Gregory is the owner of the undivided one-half, subject, however, to trust deed to said land executed by said Gregory to certain trustees to secure payment of the balance of the purchase price to George Swanston.

"Swanston Land.

Acreage ................................... 661.1
Contract 9—
    Purchase price ........................$165,280.00
    Payments ............................. 48,820.00
    Interest ............................... 13,282.00
    Taxes ................................. 1,238.14
    Improvements ................... ....... 1,211.00

including the land described as follows."

The defendants demurred to the second amended complaint, generally, upon the ground that it did not state facts sufficient to constitute a cause of action, and specifically, that several causes of action were improperly joined and that the complaint was uncertain and ambiguous in many specified particulars. The demurrer by a general order was sustained and the plaintiffs refusing to further amend within the time granted for that purpose, judgment was accordingly entered for the defendants, from which the plaintiffs have appealed

upon the judgment-roll. It is argued here, primarily, that both agreements evidenced the result of the ultimate negotiations of the parties which all the while related solely to a single subject matter and were, notwithstanding the fact that they were separately made and contained no reference, express or otherwise, to one another, sufficiently shown as a matter of pleading, to be but a single indivisible contract which, when supplemented by all the allegations of the complaint, sufficed to support plaintiffs' cause of action.

"Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." (Civ. Code, sec. 1642.) Obviously, the most certain criterion of the completeness of an individual writing will be found within the writing itself. It is therefore the general rule that two or more separately executed instruments may be considered and construed as one contract only when upon their face they deal with the same subject matter and are by reference to one another so connected that they may be fairly said to be interdependent. Of course, this rule is not so rigid as to be absolutely unyielding in the face of a suggestion contained in the writing itself that it is not complete, or of circumstances which call for the application of a well-defined exception to the rule that "a contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." (Civ. Code, sec. 1647.) This is so, we apprehend, because while ordinarily the subject matter and identity of the parties to several instruments will be disclosed by a reference to the instruments themselves, nevertheless, "the question of whether or not several instruments between the same parties were . . . intended . . . to cover a single transaction oftentimes cannot be ascertained from an inspection of the instruments themselves, and consequently, if the intention of the parties be either not expressed or doubtfully expressed, resort may be had to extrinsic evidence which will show the circumstances under which the several instruments were made for the purpose of ascertaining the intention of the parties concerning the scope and effect of the several instruments." (*Torrey* v. *Shea,* 29 Cal. App. 313, [155 Pac. 820].) It will be noted that the second agreement in controversy here recites the fact of "the purchase of the real property *hereinbefore described* as the Swanston land," but

in that particular instrument the "Swanston land" was not theretofore or subsequently described, and consequently it may be fairly said that there is to be found in the second instrument itself a suggestion that, standing alone, it is not a complete expression of the intention and ultimate agreement of the parties concerning its subject matter, and, therefore, under the exception to the general rule permitting the coupling of single separate contracts and then considering and construing them as one, the allegation of the complaint in the case before us that the second agreement in controversy was a modification of, and an addition to, the first might properly have been held as a matter of pleading to be good and sufficient as against a general demurrer. But even so, the complaint was otherwise deficient in its failure to aver those particulars of the transaction in suit, which, if existent, were vitally essential to the creation and pleading of a cause of action in the plaintiffs.

Thus it will be observed that the complaint while first alleging that "the plaintiffs found and procured a purchaser for the land" described in the first agreement and later alleged that the plaintiffs had *notified* the defendants "that plaintiffs had procured a purchaser who was ready, able and willing to purchase said land and pay the purchase price to said defendants," still it stopped short of alleging in terms, and we cannot say that it clearly follows by necessary implication from the complaint as a whole that the plaintiffs had procured a purchaser who was ready, able, and willing to purchase the precise property designated in either or both agreements for the amount and upon the terms stated therein. In this behalf it will be observed that the first agreement expressly stipulated "that the purchaser shall and will hold first parties and the estate of Wm. E. Lovdal, deceased, free and harmless from all liabilities on said contract," and that the second agreement specifically set forth further terms upon which the sale was to be made; and the complaint does not allege that the purchaser procured was ready, able, and willing to purchase upon these terms. It is manifest that standing alone the allegation that "plaintiffs had found and procured a purchaser for the land described in said Exhibit 'A'" will not suffice as an averment that the purchaser was ready, able, and willing to pay the amount designated and upon the terms specified in the

contract, and that allegation is not effectively aided by the other and later allegation of the complaint that the plaintiffs "immediately notified the defendants that plaintiff had found and procured a purchaser who was ready, able, and willing to purchase said land and pay the purchase price to defendants." The latter allegation is no more, and evidently was not intended by the pleader to be anything more, than án averment of the fact that ·notice had been given the defendants of what the plaintiffs had done in the matter of procuring a purchaser, and that, we take it, is materially different from a direct and positive averment that the plaintiffs had in fact, as they said when notifying the defendants, "found and procured a purchaser who was ready, able, and willing to purchase said land and pay the purchase price to the defendants." But if it be conceded for argument's sake that the latter allegation may be fairly construed to be a positive averment of the fact that the plaintiffs had found a purchaser for the property, rather than merely an allegation, as the pleader intended, that the plaintiffs had given notice of the fact, still, and even though it be coupled with the first allegation and both allegations then considered and construed as a single averment, nevertheless, neither allegation, separately or conjunctively, expressly nor by necessary implication, avers that the purchaser procured, was ready, able, and willing to pay the precise price provided in the first contract, namely, "the amount that said first parties, or said estate, had paid on said contracts, plus the amount of the commissions charged . . . for making such sale" at the times and in the manner and upon the terms prescribed in either or both contracts. This the plaintiffs were required to do, and then allege in direct and precise terms the doing of it, in order to have à good cause of action upon the contract. The doing of anything less than, or different from,. that designated in the contract will not suffice, and the material fact of the procurement of a purchaser at the price and upon the terms fixed by the contract must be stated in unequivocal language and not be left to inference. (*Moore v. Besse,* 30 Cal. 570, 572; *Booth* v. *Moody,* 30 Or. 222, [46 Pac. 884]; *Jacobs* v. *Shenon,* 3 Idaho, 274, [29 Pac. 44]; *Hayden* v. *Grillo,* 26 Mo. App. 289; *Hardy* v. *Sheedy,* 58 Or. 195, [113 Pac. 1133]; *Wright* v. *Beach,* 82 Mich. 469, [46 N. W. 673]; *Newton* v. *Donnelly,* 9 Ind. App. 359, [36

N. E. 769]; *Weitbrec* v. *Morris*, 62 Colo. 345, [163 Pac. 1119].) This is so because the contract in suit fixed the right of the plaintiffs to remuneration (*Merriman* v. *Wickersham*, 141 Cal. 567, 570, [75 Pac. 180]), and a "broker's contract for the sale of real estate is not performed, nor is his commission earned, until it affirmatively appears, that he had procured a purchaser ready, able, and willing to buy the property offered for sale upon the terms and at the price fixed by the contract." (*Douglas* v. *Spangenberg*, 23 Cal. App. 294, [137 Pac. 1103]; *Newton* v. *Donnelly, supra; Masten* v. *Griffing*, 33 Cal. 111; *Dolan* v. *Scanlon*, 57 Cal. 261.)

While it is true that *prima facie* the contract in suit does not in terms disclose the precise price for which the defendants' interest in the property was authorized to be sold and may be said to be uncertain to the extent that extrinsic evidence would be required to show what was "the amount" the defendants had paid for their interests in the property to be sold, nevertheless, that "amount," whatever it may have been, was presumably within the knowledge of the pleader, and, therefore, it was incumbent upon him, by appropriate averments, to plead the price paid for defendants' interest in the property and then allege that was the price which the purported purchaser had agreed to pay. Not having done so, and the contract having been pleaded *in haec verba,* the complaint as a whole is permeated with the uncertainty of the contract, and the fact that evidence might have been admissible to remove that uncertainty will not suffice to cure the defect in pleading. (*Durkee* v. *Cota*, 74 Cal. 313, [16 Pac. 5].)

The complaint not measuring up to the requirements of the contract in the particulars stated, the defendants' demurrer was properly allowed for that reason alone, and, therefore, it will be unnecessary for us to show, as we might readily do, that the complaint was sadly obnoxious to the many assignments of obvious uncertainty and ambiguity in many material matters presented by the demurrer, all of which might have been easily corrected by several simple allegations.

Counsel for appellants urge that even though it cannot be held that the complaint states a cause of action in the particulars previously stated for a commission, because it does not show that the plaintiffs had performed in precise pur-

suance of the terms of the contract, still it is insisted that the complaint sufficiently states a cause of action for the sum sued for upon the theory that "on or about" December 12, 1913, the defendants when notified of plaintiffs' procurement of a purchaser had, as is, in effect, alleged in the complaint, expressly stated that they would not consummate a sale with any purchaser the plaintiffs might procure, and did "on or about" the twentieth day of December, 1913, within the time limited as the life of the contract, sell and convey to the city of Sacramento the land described in the complaint without giving at any time prior to said December 20, 1913, the ten days' notice in writing to the plaintiffs called for by the first agreement, that they, the defendants, had an opportunity to sell the property described in that agreement. These facts, admittedly true for the purposes of the demurrer, show that the defendants had in effect wrongfully revoked the agency created by the agreement—that is to say, the defendants having by the agreement undertaken not to exercise their inherent power to revoke the agency save upon certain prescribed conditions, the exercise of that power without compliance with those conditions was in violation of the agreement and therefore wrongful. But it will be observed that the complaint does not allege that such revocation operated to retard or prevent the plaintiffs' performance of the contract, and, of course, it could not have operated to deprive the plaintiffs of the compensation contracted for or its equivalent in damages for the nonperformance of the contract if, in keeping with the contract and within the time therein limited, they had, notwithstanding the revocation, procured a purchaser who was ready, able, and willing to purchase at the price and upon the terms prescribed by the contract; or if it had been made to appear that plaintiffs, within the time limited by the contract, "had in good faith expended money and labor in advertising for, and finding a purchaser," and were at the time of the revocation "in the midst of negotiations which were evidently and plainly approaching success." (Mechem on Law of Agency, sec. 209; *Blumenthal* v. *Goodall,* 89 Cal. 251, [26 Pac. 906]; *Hawley* v. *Smith,* 45 Ind. 183; *Lane* v. *Albright,* 49 Ind. 275; *Stewart* v. *Murray,* 92 Ind. 543, [47 Am. Rep. 167].) In other words, the defendants would not be relieved from the liability of the contract by a capricious re-

fusal to consummate a sale of the property or by their voluntary act which precluded the possibility of performance on their part, and this is so "upon the familiar principle that no one can avail himself of the nonperformance of a condition precedent who has occasioned its nonperformance." (*Moses* v. *Bierling,* 31 N. Y. 462; *Sibbald* v. *Bethlehem Iron Co.,* 83 N. Y. 378, [38 Am. Rep. 441].) So, therefore, whether the complaint be considered as proceeding upon a cause of action on the one hand for commissions earned and on the other hand for damages to the extent of such commissions, because of the alleged prevention of performance, it fails in either event to state a cause of action in this, that it does not allege that the plaintiffs did, within the time limited by the agency contract, either before or subsequent to its revocation, procure or could have procured, within the time limited, a purchaser ready, able, and willing to purchase for the price and upon the terms stated in the contract. (*Waterman* v. *Boltinghouse,* 82 Cal. 659, [23 Pac. 195].)

The judgment is affirmed.

Wilbur, J., and Melvin, J., concurred.