## Lloyd *versus* Farrell.

*Vendee of land only entitled to special warranty deed.—Admissibility of parol evidence to affect agreement and deed for sale of land.—Concealment of defects in title, when constructive fraud.—What defects in title are covered by the statutory covenant in the words "grant, bargain, and sell."*

1. The purchaser of land in fee simple is entitled to a covenant of special warranty only: he cannot claim anything more than a covenant against the acts of the grantor and his heirs.

2. Where, in an action on a purchase-money bond, given for land sold by articles of agreement, the title to which proved defective, there was parol evidence to support the allegation of the vendor that the purchaser had bought at his own risk, it was *held*, to be error to refer it to the jury in connection with the agreement and the fact that the deed was made and taken with a special warranty, as proof from which they might infer that the vendee had agreed to take the land at his own risk.

3. Where the vendor contracted by the articles of agreement to convey the land in fee simple clear of all encumbrances, parol testimony that at the time of the execution of the agreement the understanding was that the vendee should take whatever title the vendor had at his own risk, was *held* inadmissible to contradict the written instrument, and incompetent to destroy its covenants.

4. As the bonds for the purchase-money were given on the execution of the deed and not of the agreement, what was said at the signing of the latter could have no bearing upon the deed: hence as the question as to the vendee's agreement to take the title at his own risk was submitted, without proper evidence, to the jury, such submission was *held* error.

5. Where the vendor, at the time of his conveyance, knew of the interest of others in the land, growing out of the original purchase, it was *held*, that

[Lloyd *v.* Farrell.]

he could not bind his vendee, who was ignorant of the facts, to assume all the risk of the title: and that his concealment of such facts was constructive fraud.

6. The defect of the plaintiff's title in this case was not covered by the statutory covenant contained in the words " grant, bargain, and sell," of the deed, or by the express covenant of special warranty therein.

ERROR to the Common Pleas of *Blair county*.

This was a proceeding in the court below, under which a judgment for $2000, which had been entered on a warrant of attorney against Gilbert L. Lloyd at the suit of Thomas Farrell, to January Term 1856, No. 120, was opened, and the defendant let into a defence.

The case was this:—In May 1854, Thomas Farrell entered into an article of agreement with Gilbert L. Lloyd, in which he covenanted to sell and convey to him in fee simple, and clear of all encumbrances, a tract of land, in the warrantee name of Abraham Bell, for the sum of $6000 : $1000 to be paid 1st July 1854 ; $2000 to be paid 1st July 1855 ; $2000 to be paid 1st July 1856, and $1000 to be paid 1st July 1857.

On the 1st of July 1854, in execution of this agreement, Thomas Farrell made and executed to Mr. Lloyd a deed for the tract, with special warranty. One thousand dollars was paid at the time, and Mr. Lloyd's judgments taken for the remaining sum of $5000, in amounts and payable as specified in the agreement. While things stood thus, to No. 47, April Term 1855, Thomas Lynch and Catharine his wife—Catharine Lynch being a sister of Thomas Farrell—brought ejectment against Lloyd for the undivided third of this land, and on the 1st February 1856, obtained a verdict upon which there was a judgment, which was afterwards affirmed by the Supreme Court. A claim was also set up for a life interest in the land, in right of Elizabeth McCormick, another sister of Thomas Farrell, and an ejectment brought to July Term 1856, but which had not been prosecuted to judgment.

On the 26th of August 1858, upon the application of Mr. Lloyd alleging failure of consideration, this judgment, the first one in the series given by him to Thomas Farrell for the purchase-money of the land, was opened by the court, and the defendant let into a defence ; and an issue was directed to try before a jury the truth of the defendant's allegation ; whether the consideration of the judgment has wholly or in part failed ; whether the defendant was entitled to be relieved from the payment of the judgment, or any part of it, or what amount, if any, is due and payable upon it.

The averred failure of consideration rested upon an alleged failure of the title conveyed to the extent of two undivided thirds. This was denied on the other hand : and it was further answered that, if the title were shown to have failed to the extent

[Lloyd *v*. Farrell.]

alleged, Mr. Lloyd agreed to take upon himself the risk of it, and would not therefore be entitled to relief.

The jury were instructed that the papers in evidence showed that Thomas Farrell held the title for himself, and in trust as to the two-thirds of it for his sisters, Catharine Lynch and Elizabeth McCormick; and this in view of, and notwithstanding all the evidence offered for the purpose of showing that the land was bought by Barnabas Farrell, their father, in his lifetime, for Thomas, and that there was no evidence upon that subject upon which the cause is submitted to them. That there was a failure of the title conveyed proved, to the extent of the undivided two-thirds, with respect to which Thomas Farrell was shown by the evidence to have held the title as trustee for his sisters, and with respect to the interest of Catharine Lynch, the failure was evidenced by a judgment of this court, and of the Supreme Court affirming the judgment, [and that the result must be to relieve the defendant from the payment of this judgment, unless he is shown to have taken upon himself the risk of this defect in the title.]

The court also instructed the jury that a vendor, though he has taken a conveyance, upon a failure of the title, is entitled to relief against the unpaid purchase-money, unless it plainly appears that he agreed to take upon himself the risk of the title. If therefore it plainly appeared that Mr. Lloyd agreed to run all risk as to the title, he would not be entitled to relief against the payment of the purchase-money, though a failure of title be shown, in the absence of evidence of a fraud having been practised upon him. The court further said: "[It is alleged, and we are asked by the defendant's counsel to instruct you, that the failure of title in consequence of the act of Thomas Farrell taking the title in his own name from Ross and Collins, is a violation of the covenants in the deed, which is an available defence to the payment of the purchase-money; and further, that that act and the knowledge of the state of the title in Thomas Farrell, which it implied, without disclosing it to Lloyd, are proof of fraud. It is claimed that the case, in this respect, is to be distinguished from the case of a prevailing outstanding independent title. We are not prepared, with the examination we have been able to give the point, to affirm this distinction, and we decline to give the instruction asked. Nor, since a party might be acting in good faith in some transaction connected with his title which would occasion a fatal defect in it, when he firmly believed it to be good, can we instruct you, as asked, that such an act is proof of fraud.] The misrepresentation or the concealment of a material fact would, however, be fraudulent, and would relieve a party from an agreement to run the risk of the title.

You will judge whether there was any concealment or unfair dealing in this case.

"We now recur to the question: it is the law, and it is but the dictate of common justice and common honesty, that a party should only be compelled to pay for what he gets, unless it plainly appears that he acted upon his own judgment, and took upon himself all risk of the title. The evidence of this should be plain and satisfactory, before he is called upon to pay for what he does not get. Did Mr. Lloyd do so, and does the evidence plainly show it, without any fraud being practised upon him? It is a question of intention. What was the fair, uninfluenced intention of the parties?"

William M. Lloyd, one of plaintiff's witnesses, having testified that he was present when the contract was signed, and the deed delivered, and that it was the understanding that Mr. Lloyd was to take whatever title Farrell had at his own risk, the court, in reference to this, said:—

["We have been asked by the defendant's counsel to withdraw this evidence from the jury, for the reason that it is contradictory of the agreement and in itself insufficient. We decline, however, to do so.] We submit it with the agreement, and the fact that a deed was afterwards taken without a warranty, or with a special warranty, repeating that it should plainly appear that Mr. Lloyd, without any fraud being practised upon him, did agree to take the risk of the title upon himself, to deprive him of the benefit of a defence otherwise plainly made out. If the evidence does show that, then the plaintiff should have a verdict for the amount of the judgment and interest. Otherwise your verdict should be for the defendant."

Under these instructions there was a verdict and judgment for $2880. This writ was then sued out by the defendant, who assigned for error the refusal of the court below to withdraw from the consideration of the jury the testimony of William M. Lloyd; the admission of testimony as to profits realized by Lloyd out of the land; and so much of the charge of the court below as is printed above in brackets.

*Samuel S. Blair*, for plaintiff in error

*Hall & Neff*, with whom was *John Scott*, for defendant.

The opinion of the court was delivered, June 22d 1864, by

STRONG, J.—That the title to the land, for the purchase-money of which the bond was given, has failed to the extent of two third parts thereof, is beyond controversy. The evidence given at the trial in the court below shows it, and the court so instructed the jury. The plaintiff therefore was not entitled to

[Lloyd v. Farrell.]

recover, unless the defendant had agreed to take the risk of a defective title upon himself. If he did, then, what he bargained for was not a good title, but such a title as Thomas Farrell gave him, and there has been no failure of consideration.

It was upon this question that the case turned in the court below, and the errors assigned relate mainly to the instruction given to the jury respecting it. The land had belonged to Peter Collins and James Ross. On the 7th of October 1841 they sold it by articles of agreement to Barnabas Farrell, the father of the plaintiff, for the sum of $375, of which he paid $160, the first instalment, in full, and. $8 on account of the second instalment. Shortly afterwards he died leaving three children, of whom the plaintiff Thomas Farrell was one. After his death his son Thomas paid the remainder of the purchase-money, and took a deed to himself from Collins and Ross, giving to them a bond conditioned upon his procurement of a release to them by his two sisters. He afterwards purchased a tax title under a sale made in 1846. Having thus a perfect legal title, subject however to a trust as to two undivided third parts for his sisters, in May 1854 he entered into an article of agreement, by which he covenanted to " well and sufficiently grant, convey, and assure unto Gilbert Lloyd (the defendant), his heirs and assigns, in fee simple, clear of all encumbrances, all the tract of land, in consideration of which the vendee covenanted to pay the sum of $6000 in instalments, as follows : $1000 on the 1st of July 1854, $2000 on the 1st day of July 1855, $2000 on the 1st day of July 1856, and $1000 on the 1st day of July 1857, the payments to be secured by bond and mortgage. On the 1st day of July 1854, in pursuance of this article, Thomas Farrell conveyed the land to the defendant, in fee simple, describing it as the same as that which had belonged to Peter Collins and James Ross, and which they had conveyed as above described. The deed contained only a covenant of special warranty against the grantor, his heirs and assigns, in addition to the covenant implied in the words " grant, bargain, and sell." On the day of the date of the deed, Lloyd gave his bonds for the unpaid purchase-money, of which that now in litigation is one.

There is nothing either in the agreement or in the deed to show that the purchaser undertook any risk of title, or that he bargained for anything less than a perfect title. The contrary is expressly declared in the article of agreement, and such is the legal effect of the deed. ' Nor is it pretended that he had any knowledge of defect of title in Thomas Farrell his grantor. He was not informed of the trust in favour of the grantor's sisters, nor of anything that should have put him upon inquiry. He did not take a deed for the right, title, and interest of his grantor, but a deed for the land itself, with all the covenants to which he

[Lloyd *v.* Farrell.]

was entitled as a purchaser of a perfect title. It is true the deed contains no covenant of general warranty against the world, but the purchaser of a perfect right is not entitled to anything more than a covenant against the acts of the grantor and his heirs—that is a covenant of special warranty: Withers *v.* Baird, 7 Watts 229; Espy *v.* Anderson, 2 Harris 312; Cadwalader *v.* Tryon, 1 Wright 322.

To show, however, that his conveyance was of no more than his own right, and that the defendant bought at his own risk, the plaintiff called a witness, who testified that he was present at the signing of the agreement and at the delivery of the deed; that it was the understanding that Mr. Lloyd was to take whatever title Farrell had, at his own risk; that he did not undertake to give the language of the parties; that the conversation was just before the signing of the article; that there was nothing said about the rights or claims of the other heirs, not a word about two-thirds of the land belonging to Farrell's two sisters; that the parties came into his office only to sign the agreement; that he did not undertake to give Mr. Lloyd's words, or what Mr. Farrell said, and that the way he had stated it before was, that Lloyd was to take just such title as Farrell had, without guaranty of any kind. The witness said nothing of what took place when the deed was delivered, or after the article of agreement was made. This testimony the court submitted to the jury in connection with the agreement, and the fact that the deed was afterwards taken with only a special warranty, as evidence from which they might find whether Lloyd had agreed to take the land at his own risk, and thereby precluded himself from setting up a defect of title as a defence to the plaintiff's claim on the bonds given some months afterwards for the purchase-money. The agreement expressly negatived such an assumption, and the fact that the deed contained no more than a covenant of special warranty was no evidence of it, for, as has been shown, such a covenant is all that the purchaser of a perfect title can claim. This fact should not, therefore, have been presented to the jury as tending to prove an undertaking by the grantee to run the hazard of the title. Nothing then remains but the testimony of the one witness, and this the court was requested to withdraw from the jury as contradictory to the written agreement, and insufficient in itself. We think the request should have been granted. At best, the testimony was indefinite. We are not even informed whose understanding it was of which the witness spoke. Was it his own, or that of the parties? Was it the witness's construction of the written agreement, or of the conversation of Farrell and Lloyd? If, as is probable, the witness referred to the understanding of the parties, how did he gather it, from their negotiation or their written contract? And, so far

as the testimony had any significance, it was in direct contradiction of the written covenant given by Farrell and exacted by Lloyd, with no evidence or even allegation of mistake or fraud. Had there been nothing more than the article of agreement between the parties, such parol evidence would have been incompetent to destroy its covenants.

Still more apparent it is, that the case should not thus have been submitted to the jury, when it is considered that the real consideration of the defendant's bond was not the agreement, but the deed given in July afterwards. That, standing by itself, purports to assume a title. It is a grant of the land, not of an uncertain right in the land; and there is nothing to show that the grantor did not intend what he expressed by his deed. Even if the written agreement could be reformed, and made to express its exact opposite by parol evidence of what the parties said before its execution, such evidence can have no bearing upon the deed. We hold, therefore, that the court erred in submitting without legal evidence to the jury, the question whether Lloyd took the title to the land at his own risk.

The charge of the learned president of the Common Pleas was not quite accurate in another particular. He was requested to instruct the jury, that the act of Thomas Farrell, in taking the title in his own name from Collins and Ross, and selling to the defendant without disclosing the state of the title, was proof of fraud. The instruction asked for was refused, though the court did say after the refusal, that the misrepresentation or concealment of a material fact would be fraudulent, and would relieve a party from an agreement to run the risk of the title. The inevitable effect of such instruction upon the minds of the jury must have been to create the impression, that though concealment of a material fact would have been fraudulent, yet concealing the fact that Farrell's two sisters had an equitable title to two-thirds of the land sold was not material. This is doubtless not what the court meant, but it is what the jury probably understood. The court intended to say that if Farrell thought he had a good title, good faith did not require him to state to his vendee facts connected with it which he deemed of no importance. But Farrell knew that the land had been purchased by his father from Collins and Ross, and that much of the purchase-money had been paid by him. When he took the title, he agreed to procure releases of the rights of his sisters. That they had rights he must be presumed to have known. That, with such knowledge concealed in his own bosom, he could have bound his ignorant vendee by an agreement to assume all the risk of a title, would be grossly inequitable. It is idle to say that any court of equity would enforce such a contract. Even in cases of attempted rescission of contracts, it is not indispensable to

[Lloyd *v.* Farrell.]

the interference of such a court that a case of actual fraudulent intention should be made out. Constructive fraud is sufficient: 2 Story Eq., § 694, *et seq.* And in this state a contract of sale is not so completely executed as to be beyond the reach of a chancellor, until the purchase-money has been actually paid.

There is nothing else in this record that requires particular notice. We do not perceive that the testimony of James Cooper in relation to the profits of the land had any legitimate bearing on the case, and we concur in opinion with the court below, that the defect in the plaintiff's title, such as it was, was not covered by the statutory covenant contained in the words "grant, bargain, and sell" of the deed, or by the express covenant of special warranty.

The judgment is reversed, and a *venire de novo* awarded.