## MARY HEMINGWAY *et al.*

*v.*

## THE CITY OF CHICAGO.

1. SPECIAL ASSESSMENT—*to open an alley—notice.* In a proceeding to levy a special assessment to open an alley, the notice is sufficiently certain if it states the location of the alley and the land to be taken, in the language of the ordinance, giving the numbers of lots in the block and the portions to be taken for the alley. This is a compliance with the charter.

2. DEDICATION OF WAY FOR ALLEY. Where ground has been set apart as a private alley, or conveyed to adjoining property owners as a private alley, although used by the public as a pass way without hindrance, such acts do not amount to a dedication to the public, as the intent to dedicate is wanting.

3. NOTICE—*certificate of publication.* Where a notice that an assessment has been completed, and that application will be made for confirmation, and the certificate of publication fails to state the last day it was inserted, there is no legal evidence that publication was made, and the collector has no authority to apply for a judgment on the assessment roll.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. KING, SCOTT & PAYSON, for the appellants.

Mr. M. F. TULEY, Corporation Counsel, for the appellee.

Mr. JUSTICE MCALLISTER delivered the opinion of the Court:

This was an application made by the collector of the city of Chicago, at the March term, 1871, of the Superior Court of Cook county, for judgment on a special assessment warrant, in a proceeding for opening an alley 16 feet wide running north and south through block 16, Johnston, Roberts & Storr's addition, condemning therefor the east 4 feet of lot 10, all of lot 11 and the east 16 feet of lot 12, all in said block 16.

Objections to the application were filed by appellants, which were overruled by the court, judgment given for appellee, and the case brought to this court by appeal.

The following points are relied upon for reversal:

*First.* That the city collector was not authorized to apply for judgment.

*Second.* The land appropriated for opening the alley had all been previously dedicated by the owners for the purpose of a public alley.

*Third.* The notices required to be given by the commissioners did not properly describe the location of the alley, and were calculated to mislead appellants, who were property owners in the adjoining block 13.

We will dispose of these points in the inverse order in which they are stated.

We think the notices were sufficient. They described the location of the alley and the land to be taken in the precise language of the ordinance, giving the numbers of the lots in block 16, and the definite portions thereof to be taken for the proposed alley. All the description required by sec. 6, chap. 7, of charter, (Gary's Laws, 62-3,) is, that the commissioners shall specify in the notice what such assessment is to be for, "and shall describe the land to be condemned as near as may be done by general description."

The second point involves the question of dedication, which is claimed to have been effected in two different modes: one, an act *in pais*, respecting the north half of the alley; the other, by deed, relating to the south half.

Flentye, one of the appellants, testified that one half of the alley in question had been in use from ten to thirteen years, by everybody, and the other half four or five years; that he dedicated the north half, next to Wendall street, himself, he having bought the land and paid for it. He made it 12 feet wide.

On cross-examination, he said that, by dedicating, he meant that he made it a private alley; in fact it is a private alley, but they have made it a public alley. Somebody drove into his barn and broke down a pillar. He tried to fence it up, but they broke the fence down and told him it was a public

alley. This was two to four years ago. His land is the north 37 feet of lot 2 and the whole of lot 3, block 13. Hemingway's is next south. He did not buy this alley as a private alley. He bought it as a lot. It was made a public alley, though witness bought it as a private alley. He made an alley in the first instance, and it has been broken into and used as a public alley, without let or hindrance.

Scranton, another witness, testified, on behalf of the city, that he was the present owner of lot 11, formerly part of said alley; that he bought it of Moss for $25; that witness never dedicated it as a public alley; he had paid taxes on it all the time; it had been used by the public all that time without obstruction; he did not know whether Moss had dedicated it or not; the 12-foot alley was fenced off from the adjoining lots on both sides, and was used by the public as a thoroughfare for several years.

It appeared in evidence that, in 1856, Moss sold and conveyed to Mrs. Hemingway a right of way over said lot 11, described in the deed as follows: " Said strip of ground to remain forever unobstructed, and to be used as a private alley by the said Mary Hemingway and said Moss, their heirs and assigns, as an appurtenance of said 21½ feet south, and adjoining the north 37 feet of said lot 2." Mrs. Hemingway was the owner of said 21½ feet.

This is all the evidence given, and it is not satisfactory as to establishing a dedication.

The most that can be made out of Flentye's testimony is, that at first he did not intend to make the part opened by him a public alley, but the public tore down his fences and used it in spite of his efforts to the contrary, and for several years he had ceased to interfere with such use.

The deed from Moss to Hemingway did not operate to dedicate lot 11 to the public as an alley, but created in the grantee an incorporeal hereditament, a perpetual right of private passage to her and her heirs and assigns over the lands of Moss, his heirs or assigns. How or upon what basis this lot 11 was

estimated in the condemnation proceedings, does not appear. The proceeding itself is extraordinary, under all the circumstances, and there is reason to suspect some private scheme at the bottom. For several years this alley was open to the public. It had been put in good condition, and nobody interfered with the public use of it. Whether it was the interest of the purchaser of lot 11, at the sum of $25, who was seeking to obtain, by this proceeding, the full value of that lot, notwithstanding the burden of a perpetual easement upon it, does not very definitely appear, although there is strong reason to suspect it. The proceedings show that $1800 were awarded to Scranton as damages. It would be very strange if the mere naked fee of that lot, subject to the easement, should be worth $1800, and very unjust if the value of the incorporeal hereditament in Mary Hemingway should have been entirely disregarded, and she assessed $430 to pay Scranton for her own property.

There is enough in this record to afford ground for a strong belief that this affair was a fraud upon these appellants. The common council, after the mischief was done, repealed the ordinance. The entire record was introduced in evidence, from which it appears that the certificates of publication by the commissioners of the notice of completion of the assessment, and of application for confirmation, are in the exact form we have repeatedly held defective, for not stating the date of the last paper containing the same.

The city collector was not authorized to apply for judgment. *Hills* v. *City of Chicago, ante.* p. 86.

The judgment is reversed and the cause remanded.

*Judgment reversed.*