(January 8, 1912.)

# WILLIS G. NEWMYER, Appellant, v. JAMES C. ROUSH, Respondent.

[120 Pac. 464.]

EASEMENT—WARRANTY AGAINST ENCUMBRANCES—PRIVATE RIGHTS OF WAY—RESCISSION OF CONTRACT—EVIDENCE.

(Syllabus by the court.)

1. Where an easement and right of way have been granted by Congress or are provided for by the state legislature, over public lands belonging to the government or the state, as the case may be, the existence of such easements does not constitute a breach of covenant against encumbrances in subsequent conveyances of said land. *Schurger v. Moorman*, 20 Ida. 97, 117 Pac. 122, approved.

2. Where a public highway has been constructed and opened and used by the public, and is of such general character as to give notice of its use, across a tract of land, it is not such an encumbrance as will constitute a breach of a covenant of warranty, and the purchaser of such land is presumed to have had in mind the existence of such easement, and that the parties in making such contract did not intend to include the same in the contract or conveyance.

3. Where an easement is granted for a private roadway or passage over a tract of land and the use is limited to the person to whom the easement is granted, and his successors or assigns, and there is no indication of any intention to dedicate the same to a public use, and such private road or passageway is inclosed, such easement is a claim or right that interferes with the possession of the owner and affects the estate and falls within the spirit and intent of a covenant of warranty, and is an encumbrance upon the estate.

4. The mere fact that the purchaser of real property has knowledge of the existence of a private roadway across the land which he contracts to purchase will not defeat his right to insist upon a clear title from the seller, who agrees to convey said lands free from encumbrances, and oral testimony will not be admitted to contradict the contract of sale, in which it is provided that the title shall be clear and free from encumbrances.

5. Where a contract in writing is entered into between N. and R., whereby N. agrees to convey to R. a tract of land in the state of California in exchange for lands in Idaho to be conveyed by R. to

N., and the contract specifies that the titles to the respective pieces of property are to be clear and free from encumbrances, and deeds are to be exchanged between the parties thereafter in accordance with the terms of said contract, and thereafter R. goes into possession of the property agreed to be conveyed to him by N., and after he takes possession of said property N. tenders to R. a deed for such property, which contains a reservation of a private way across said land, and R. refuses to accept said deed and rescinds said contract of exchange, and vacates said property and takes possession of the property he contracted to exchange, the mere fact that R. took possession of the property before the deeds of conveyance were executed does not preclude R. from relying upon the contract of exchange or preclude him from requiring a deed in accordance with such contract, conveying a clear title and free from encumbrance.

APPEAL from the District Court of the Eighth Judicial District for Kootenai County. Hon. Robt. N. Dunn, Judge.

Action for the specific performance of a contract for the sale of real property. Judgment for defendant. Plaintiff appeals. Judgment *affirmed.*

John P. Gray, and Frank M. McCarthy, for Appellant.

A written contract for the sale of real property may be modified by a subsequent oral agreement. (*Prairie Dev. Co. v. Leiberg,* 15 Ida. 379, 98 Pac. 379.)

An action for specific performance can be predicated upon a verbal contract to convey real estate. (*Robbins v. Porter,* 12 Ida. 738, 88 Pac. 86.)

The reservations contained in the deed by appellant to respondent for conveying the California lands did not constitute a breach of covenants against encumbrances. (*Schurger v. Moorman,* 20 Ida. 97, 117 Pac. 122; *Desvergers v. Willis,* 56 Ga. 515, 21 Am. Rep. 289; *Whitbeck v. Cook,* 15 Johns. (N. Y.) 483, 8 Am. Dec. 272.)

It was the duty of the court, if he considered that the reservation as to the road was a breach of covenant against encumbrances, to have received in evidence the second deed and to have compelled the respondent to accept the same. (*Marden v. Leimbach* (Md.), 80 Atl. 958.)

Respondent was in possession of the property, collecting rents for the use of portions thereof, had his home established on the premises, and held said property to the exclusion of everyone else. He made no offer to rescind the contract or to deliver possession to the appellant, and his every act showed that he proposed to keep the land and to avoid compliance with the terms of the contract because he now claims to be dissatisfied with the title. This he cannot be permitted to do. (*Dunn v. Mills*, 70 Kan. 656, 3 Ann. Cas. 363, 79 Pac. 146, 502; *Brown v. McCrie*, 77 Kan. 230, 94 Pac. 144; *Harrel v. Neef*, 80 Kan. 348, 102 Pac. 838.)

The law will not allow a vendee to obtain possession of the property under a contract of sale and while in possession to defend against an action for the purchase money upon the ground of the title being defective. (*Peabody v. Phelps*, 9 Cal. 213; *Hicks v. Lovell*, 64 Cal. 18, 49 Am. Rep. 679, 27 Pac. 942; *Gross v. Kierski*, 41 Cal. 112.)

The purchaser of land who enters into possession under a warranty deed or a bond for titles cannot, before eviction, defeat an action for the purchase money, unless there has been fraud on the part of the vendor, or the latter is insolvent, or there is some other ground which would in equity entitle the purchaser to relief. (*Sanderlin v. Willis*, 94 Ga. 171, 21 S. E. 291; *Wyatt v. Garlington*, 56 Ala. 576.)

Appellant tendered to the respondent a deed in due form. No objection was made to the deed or to the appellant's title and no offer was made, or has been made, to rescind the contract or to surrender possession of the land. Under these circumstances the appellant was entitled to have a decree for specific performance, especially where respondent had refused to perform. (*Harper v. Runner*, 85 Neb. 343, 123 N. W. 313; *Dunn v. Mills, supra; Niquette v. Green*, 81 Kan. 569, 106 Pac. 270.)

The respondent by going into the possession of the land and by making no offer to rescind was estopped to set up the claim that the appellant had not fully complied with all of the terms and conditions of the contract on his part to be performed. (*Lane v. George*, 84 Kan. 823, 115 Pac. 589;

*Eisenberger v. Eisenberger,* 38 Pa. Super. Ct. 569; *Morgan v. Morgan,* 54 Wash. 406, 103 Pac. 478.)

Chas. L. Heitman, F. A. McCall, and C. H. Potts, for Respondent.

The existence of a private road is a breach of the covenant against encumbrances. (*Huyck v. Andrews,* 113 N. Y. 81, 10 Am. St. 432, 20 N. E. 581, 3 L. R. A. 789; *Rea v. Minkler,* 5 Lans. (N. Y.) 196; *Russ v. Steele,* 40 Vt. 310; *Wetherbee v. Bennett,* 2 Allen (Mass.), 428.)

The covenant (against encumbrances) is broken by the existence of a paramount private right of way. (2 Devlin on Deeds, 3d ed., sec. 907; *Young v. Gower,* 88 Ill. App. 70.)

The maintaining of gates at the entrance of a way excludes the presumption of the dedication thereof to the public. (*Schmisseur v. Penn,* 47 Ill. App. 278; 11 Cyc. 1116.)

All conversations and agreements of whatever kind had between the contracting parties prior to or contemporaneous with the signing of the written contract and relating to the same subject matter are by law conclusively presumed to be merged in the final contract. (*Jacobs v. Shenon,* 3 Ida. 274, 29 Pac. 44; *First Nat. Bank of Hailey v. Bews,* 5 Ida. 678, 51 Pac. 777; *Tyson v. Neill,* 8 Ida. 603, 70 Pac. 790; *Idaho Fruit Land Co. v. Great Western Beet Sugar Co.,* 18 Ida. 1, 107 Pac. 989; *Smith v. Taylor,* 82 Cal. 533, 23 Pac. 217; *McCall Co. v. Jennings,* 26 Utah, 459, 73 Pac. 639; *Mackey v. Magnon,* 28 Colo. 100, 62 Pac. 945; Rawle on Covenants, pp. 128–130.)

Oral evidence of a grantee's knowledge of encumbrance inadmissible to control covenants in a deed. (*Holmes v. Danforth,* 83 Me. 139, 21 Atl. 845; *Eller v. Moore,* 48 App. Div. 403, 63 N. Y. Supp. 88; *Ladue v. Cooper,* 32 Misc. Rep. 544, 67 N. Y. Supp. 319; *Quick v. Taylor,* 113 Ind. 540, 16 N. E. 588; *Flynn v. White etc.,* 72 Iowa, 738, 32 N. W. 471; *De Mars v. Koehler,* 62 N. J. L. 203, 72 Am. St. 642, 41 Atl. 720; *Teague v. Whaley,* 20 Ind. App. 26, 50 N. E. 41.)

Reservations cannot be shown by parol where this would add to or contradict the contract. (17 Cyc. 611.)

In order to entitle a plaintiff to a decree for specific performance to convey land, it must appear that he has performed or been able and willing to perform his part of the contract. (*Thaxter v. Sprague,* 159 Mass. 397, 34 N. E. 541; *Rhoades v. Crozier* (Tenn.), 59 S. W. 211; *Henking v. Anderson,* 34 W. Va. 709, 12 S. E. 869; *Olympia Min. Co. v. Kerns,* 13 Ida. 514, 91 Pac. 92; *Flanders v. Rosoff,* 111 App. Div. 1, 97 N. Y. Supp. 514, 188 N. Y. 616, 81 N. E. 1164; *Fisher v. Buchanan,* 2 Neb. (Unof.) 158, 96 N. W. 339; 36 Cyc. 697.)

A vendee who has a right to a good title cannot be compelled to accept a title encumbered by an easement. (*McPherson v. Schade,* 149 N. Y. 16, 43 N. E. 527; *Remsen v. Wingert,* 188 N. Y. 632, 81 N. E. 1174.)

The remedy of the purchaser where the title of the vendor fails or he is unable to make conveyance as stipulated by the contract is to rescind the contract or offer to restore the possession. (*Taft v. Kessel,* 16 Wis. 273 (291); *Walton v. McKinney,* 11 Ariz. 385, 94 Pac. 1122; *Riley v. Allen,* 71 Kan. 625, 81 Pac. 186; *Cutwright v. Union etc. Co.,* 33 Utah, 486, 14 Ann. Cas. 725, 94 Pac. 984.)

Where one goes into possession under a contract, he does not waive his right to insist upon the title contracted for. (*Page v. Greeley,* 75 Ill. 400; *Bensel v. Gray,* 80 N. Y. 517; Maupin on Marketable Title, pp. 189, 190.)

STEWART, C. J.—This action was brought by the appellant against the respondent to enforce the specific performance of an alleged contract for the exchange of real property owned by the appellant and located in the state of California, for certain real property owned by the respondent and located in the state of Idaho. At the close of the plaintiff's evidence a motion was made by the respondent for a nonsuit. This motion was sustained, and thereafter the court made findings of fact and conclusions of law and entered a judgment in favor of respondent dismissing said action and for costs, and that the injunction rendered in said cause in favor of the plaintiff be dissolved. A motion for a new trial was made

and overruled, and this appeal is from the judgment and from the order overruling the motion for a new trial.

The facts of the case are about as follows: The respondent Roush was the owner of certain lands located in Kootenai county, Idaho, and the appellant, W. J. Newmyer, was the owner of certain real property in the state of California. Negotiations were entered into for the exchange of these two pieces of property, which resulted in said parties making an agreement in writing for such exchange, specifying therein the particular conditions under which such exchange was to be made, among which are the following: "It is understood that both parties offers in exchange property with no debts or liens thereon or possibility of same."

Afterward another writing was entered into between the parties, providing for the exchange of said real property, containing the following provision: "I am to give him a clear deed to this property and take care of the mortgage on it myself. . . . . Deeds to be exchanged as soon as possible according to details to follow herein."

Later the respondent executed and delivered to the appellant the following paper:

"While waiting the signing of final papers in the trade between W. G. Newmeyer and J. C. Roush and in view of the fact that none of us have a lease on life, this instrument drawn this 31st day of May, 1909, certifies, that the trade has been made as shown in another set of papers and will be signed as soon as a few details can be arranged, Mr. J. C. Roush takes possession of W. C. NewMeyer Ranch June 1st, 1909.

"Dated, Mt. Hermon, California, June 1st, 1909.

"J. C. ROUSH."

After these agreements had been made the appellant entered into possession of the Idaho lands and took possession of personal property described in the agreements and sold part of such property, and continued in the possession of said land until some time in August, 1909, when he was ousted from such possession by the respondent returning and taking possession of said property. The respondent and his wife, after the execution of the papers heretofore set forth, entered

into possession of the California lands, and remained in possession of the same from the 1st day of June until on or about the 8th day of August, and while thus in possession had full charge of said property.   On August 5, 1909, the appellant tendered to the respondent his deed in writing granting and conveying the California lands, properly executed and in proper form, but containing the following reservation:

"Reserving to said F. A. Hihn Company, its successors and assigns, the right to place a gate at each end of said private road, which is forty (40) feet wide, which runs up the West bank of the Zayante Creek and to keep said gates closed; said Grantee to have the privilege to pass through said gates.

"Also reserving to said F. A. Hihn Company, its successors and assigns a Right of Way for itself and its assigns over the private road through the Southwest corner of said land and running from the West boundary of the Zayante Rancho to the County Road up the West bank of the Zayante Creek.

"Said private road up the West bank of the Zayante Creek shall remain an open road Forty (40) feet wide along the Eastern boundary of the within described land.

"Said F. A. Hihn Company shall not be required to build any fences on the boundaries of the land herein conveyed."

This deed of conveyance the respondent refused to accept, and immediately vacated the California lands and returned to the Idaho lands and took possession of the same.   At the time the appellant tendered to the respondent the deed for the California lands the appellant also presented to respondent a deed of the Idaho lands which he had prepared, and requested the respondent to execute and deliver the same to the appellant, and the respondent refused to execute such deed, and ever since has refused and neglected, and still refuses and neglects, to make, execute or deliver any deed or conveyance to the appellant conveying said Idaho land.   Thereupon this action was commenced.

It is contended by the appellant, first, that the reservations in the deed executed by the appellant to respondent for conveying the California lands did not constitute a breach of covenant against encumbrances; second, that by accepting said

land and taking possession thereof and exercising acts of own-
ership thereover, the respondent thereby admitted that the
appellant had complied with all the terms and conditions of
said agreement to exchange, and was thereby estopped to deny
that the appellant had not fully complied with all the terms
and conditions of said contract; third, that by each of said
parties taking possession of the property agreed to be ex-
changed, by disposing of parts thereof and by accepting pos-
session and exercising acts of ownership over said several
pieces of land, the contract of agreement to exchange thereby
became an executed contract, and that by the respondent de-
livering to the appellant possession of the Idaho property and
appellant taking possession of the Idaho property, and by the
appellant delivering possession of the California property to
the respondent and the respondent taking possession thereof,
that each of said parties acknowledged that the other party
had fully complied with all of the terms and conditions of
said agreement of exchange, and that upon each of said parties
taking possession of said premises, the only thing remaining
to be done under the terms and conditions of said agreement
of exchange was to deliver deeds conveying the same. While
counsel for respondent contend that the plaintiff, under the
proof, did not show that he was entitled to have a decree for
the specific performance of the contract for the following rea-
sons:

First: That the writings relied upon by the plaintiff do
not constitute a completed contract.

Second: That there was a total failure of evidence to show
that the plaintiff had complied with all the terms and provi-
sions of the alleged contracts on his part in the following par-
ticulars:

That the description of the California land which plaintiff
agreed to convey to defendant in exchange for his Idaho land
contained no reservations, and the plaintiff expressly agreed
that he was to give defendant a clear deed to such land, while
the deed tendered by the plaintiff to defendant contained

reservations for private roads, which constituted encumbrances upon the land.

That the evidence failed to show that the plaintiff paid or tendered to the defendant the sum of forty-five dollars at the time the deed was tendered, it being provided in the agreement of May 21st that such sum was to be paid and settled upon the transfer of deeds, and that under the terms of the contract the plaintiff agreed to assume a note and mortgage for $500, and that the conveyance of the Idaho land was subject to an irrigating contract to one D. C. Corbin, while the deed prepared by the plaintiff and demanded to be executed by the defendant was a straight warranty deed without any exceptions or reservations and with a covenant against encumbrances.

Third: That the plaintiff failed to show that he had a clear title to the California land or could give the defendant a clear title.

The controlling question in this case is, whether the reservation made in the deed made by the appellant to the respondent for the California land constitutes a breach of covenant against encumbrances, and therefore was in violation of the contract for the exchange as entered into by the parties.

Referring to the writing of May 4, 1909, we find as follows:

"It is understood that both parties offers in exchange property with no debts or liens thereon or possibility of same."

In the writing of May 21, 1909, it is provided:

"I am to give him a clear deed of the property and to take care of the mortgage on it myself. . . . . Deeds are to be exchanged as soon as possible and according to details to follow herein. . . . . Possession to be given Roush at once and he gives me time to get our things ready to move, it being understood that we shall vacate in about two weeks."

In the letter of June 1, 1909, nothing whatever is said about the title, but reference is made to another set of papers which was to be signed as soon as details could be arranged. From these documents it is clear that the parties intended and agreed that a conveyance of the California land from Newmyer to Roush was to be clear of all encumbrances.

Counsel for appellant very strenuously contend that the reservations contained in the deed tendered by the appellant to the respondent for the California land did not constitute a breach of covenant against encumbrances, and in support of such contention rely upon the decision of this court in the case of *Schurger v. Moorman,* 20 Ida. 97, 117 Pac. 122, and the authorities cited in that opinion and other authorities in line with the holding of this court. In the case of *Schurger v. Moorman* this court had under consideration the question as to whether an easement or right of way for an irrigation canal is an encumbrance against which a covenant of warranty runs, and held that an easement and right of way across a tract of land for the purpose of maintaining and operating an irrigation canal for the reclamation of arid land is not a breach of a covenant in a deed or contract of sale against encumbrances. That decision was based upon the facts of that case, and the fact that the act of Congress of March 3, 1891, 26 Stats. at Large 1101, 6 Fed. Stats. Annot. 508, specifically grants a right of way over the public domain to an irrigation or ditch company formed for the purpose of irrigation and duly organized under the laws of any state or territory, and which complied with the terms thereof and also the provisions of the legislature of this state in accepting the provisions of the Carey Act, and "that every person who deals with or contracts in reference to any lands in this state reclaimed under the Carey Act of Congress and the acts of the legislature accepting the provisions thereof does so with notice that easements and rights of way are granted through and over such lands both by the general government and by the acts of the legislature for the purpose of maintaining irrigation canals and conveying water through the same for the purpose of irrigating the lands lying under such canals. . . . . In view of the fact that irrigation ditches and canals are a prime necessity in this state and that many of them are constructed over public lands while the title to the same is still in the government or state and for which purpose the act of Congress and likewise the act of the legislature grant an easement and right of way, we are fully satisfied that such an ease-

ment and servitude should not be held to constitute a breach of covenant against encumbrances.'' This court cites as authority supporting the rule laid down in the opinion a number of cases which hold that public roads over land, known to the purchaser at the time of the purchase, are not such encumbrances as will constitute a breach of the covenant of warranty. This rule is well recognized by a long line of decisions, and is based largely upon the fact that the easement or right of way of a public highway is obvious and notorious in character, and by reason of such fact the purchaser will be presumed to have seen it and fixed his price for the land with reference to its condition at the time; but it is the contention in this case that these cases are not applicable to the facts involved in the case now under consideration, and that the reasons announced in those cases are not applicable to an easement such as that described in the reservations contained in the deed tendered by the appellant to the respondent; that is, a private right of way.

An examination of the cases cited by counsel for appellant discloses that they are in line with the case of *Schurger v. Moorman, supra,* and the cases therein cited, and in all of such cases the court was dealing with public easements or rights of way, and in none of such cases did the court hold that a mere private passage or private road was not an encumbrance against which a covenant of warranty runs. We think it must be conceded that under the contract made between the appellant and respondent the respondent was entitled to a perfect title to the land contracted to be conveyed, and that it was to be free from any encumbrance thereon. When, therefore, a deed was tendered to respondent which reserved to F. A. Hihn. Company, its successors and assigns, the right to place a gate at each end of said private road, which is forty feet wide, which runs up the west bank of the Zayante creek, and to keep said gates closed, and the right to pass through said gates, and also a right for itself and its assigns over the private road through the southwest corner of said land, an easement was thereby created which conferred a right upon F. A. Hihn Company to a benefit and use over the es-

tate of the appellant, and was an encumbrance within the terms of the covenant against encumbrances, as contained in the contract. It was not, however, of the general character or nature of a public highway, neither was it of such a public or general nature as is created by the act of Congress and the statutes of the state, as referred to in the Schurger-Moorman case; neither was it of such a character as would justify a presumption that when the parties were making the contract, they had in contemplation the fact that a private way had been reserved across the land, and that such right of way was not within the terms and scope of the covenant of warranty.

Referring to the easement reserved to F. A. Hihn Company in the deed tendered, it will be observed that it is perpetual, and reserves to F. A. Hihn Company, its successors and assigns, without any limitation as to time, the right to place a gate at each end of said road, and the right to use portions of the land, and possesses none of the incidents of a public highway. F. A. Hihn Company have such a complete dominion over the land reserved as an easement, that such right may clearly impair the value and usefulness of said tract, and the right to the use was not granted for the purpose of benefiting the land itself or increasing its value, which is recognized as an element which justifies and warrants the opening of public highways and roads, or, as held in the Schurger-Moorman case, ditches for the carrying of water for the purpose of reclaiming arid lands.

In the case of *Russ v. Steele,* 40 Vt. 309, the supreme court of Vermont considered this specific subject. In that case the easement consisted of a private road along the premises conveyed, and the court said in the opinion: "Such being the scope and extent of the covenant declared upon, it would seem to follow that an existing, outstanding right of way across the plaintiff's premises, used and enjoyed as such, call it what we may, is such a claim or right as interferes with the possession of the proprietor, and affects the estate both in quantity and value, and falls within the terms and spirit of the covenant. The plaintiff does not get such an estate or title

as his deed by its terms ought to secure him, and this being so, the case is directly within the principle of the recent case of *Clark v. Conroe Estate*, 38 Vt. 469.''

In the case of *Blake v. Everett et al.*, 1 Allen (Mass.), 248, the supreme court of Massachusetts held that a private right of way, held by several persons, was an encumbrance upon land, and was a breach of a covenant against encumbrances. In the case of *Wetherbee v. Bennett*, 2 Allen (Mass.), 428, the supreme court of Massachusetts again held that an action lies from the covenant against encumbrances in a deed for injuries sustained by reason of the existence of a private right of way over the granted premises. In the case of *Young v. Gower*, 88 Ill. App. 70, the appellate court of Illinois had under consideration the breach of a covenant against encumbrances, and said: ''The declaration then avers that the premises so conveyed were not free from encumbrance; that one Harriet McKay Smith, at the time of the execution of the deed, had, and still has, in common with divers other persons an easement consisting of the right of way to pass over and use, for the purposes of a private alley, a certain portion of the land attempted to be conveyed by said deed. . . . . The existence of an easement such as described in the declaration is a breach of the covenant against encumbrances. (Rawle on Covenants for Title, 5th ed., sec. 79.)''

A case very much in point may be found in *Schmisseur v. Penn*, 47 Ill. App. 278, and the subject is very fully discussed and many cases cited, and in reviewing such cases and their application to the facts, the court said: ''The evidence shows that the way was originally opened as a private way and intended as such, and for many years gates were maintained, until the stock law was adopted in that county, and the fact of maintaining gates would exclude the presumption of a dedication to the public. (*Illinois Ins. Co. v. Littlefield*, 67 Ill. 368; *Hemingway v. City of Chicago*, 60 Ill. 324; *Luecken v. Wuest*, 31 Ill. App. 506.) Neither does it appear that it had been used uninterruptedly for a requisite length of time by the public as against the assertion of the owner of his right to fence the same and actually placing

gates therein; nor was it either kept in repair or taken charge of by proper officers. That it was not a public highway by prescription, see *Toof v. City of Decatur*, 19 Ill. App. 204; *Grube v. Nichols*, 36 Ill. 92. And there is no claim that it was laid out as a public highway in pursuance of the statute. The evidence, however, clearly establishes the existence of an easement in Mrs. Needles as appurtenant to her farm to pass over the land of the defendant as a right of way, and that easement in her is an encumbrance."

In the case of *Eller v. Moore*, 48 App. Div. 403, 63 N. Y. Supp. 88, the supreme court of New York enters into a very clear discussion of the subject as to whether or not a private right of way over granted premises was a breach of a covenant to warrant and defend contained in a conveyance, and in that case the court holds: "I am of the opinion that the existence of such an easement, and its use by Brown under such conditions, constitutes a breach of the covenant for quiet enjoyment contained in the plaintiff's deed. In *Rea v. Minkler*, 5 Lans. (N. Y.) 196, it was held that the existence and use of a private right of way over the granted premises, to which they were subject at the time of the conveyance, was a breach of a covenant to warrant and defend, contained in such conveyance. It was also there held that the covenant 'of warranty' is the same as a covenant for 'quiet enjoyment,' and, 'while it may be conceded that an eviction is essential to constitute a breach of either of the covenants of quiet enjoyment or warranty, it is not necessary that there should be an absolute expulsion of the covenantee from the land, but it is enough that there has been a disturbance of the free and uninterrupted use of the land. This, in law, is an eviction, and constitutes a breach of the covenant.' "

In the case of *Perry v. Williamson* (Tenn.), 47 S. W. 189, the court of chancery appeals of Tennessee, in discussing a private road as to its being an encumbrance, says: "The jury found that defendant 'knew the road was there, but not as a right of way owned by Nix,' and he knew 'it was a farm passway.' We take this to mean that the deed of complainant to Nix conveyed to him a passway across the land, and

that when defendant bought the farm he saw the trail or road mark across the land but did not know that the road belonged to Nix. The error assigned is based upon defendant's knowledge of the physical existence of the trail. It is said that in case of public roads there is no breach of the covenant against encumbrances if there be upon the land a public road known at the time to the purchaser, and that the same rule ought to be held applicable to private roads. In the case of *Haynie v. Investment Co.* (Tenn. Ch. App.), 39 S. W. 860, 867, we held that a public road, fenced up by the adjoining owners, and not in actual use as a public road, yet still legally existent, but its existence unknown to the purchaser at the time of his purchase, was an encumbrance. However, if the public road be open and in use by the public at the time, the result is otherwise. (10 Am. & Eng. Ency. of Law, 369.) But a private easement upon the land is an encumbrance; as, for example, a right of way in another. (10 Am. & Eng. Ency. of Law, 368, and notes; *Huyck v. Andrews,* 113 N. Y. 81, 10 Am. St. 432, 20 N. E. 581, 3 L. R. A. 789, and notes.) We need not decide what would be the effect if defendant had known of the legal existence of the easement, as the finding of the jury shows he did not know it. Certain it is that his knowledge merely of the physical existence of a trail across the land would not deprive him of the right to object to the legal existence of this trail as an encumbrance when such existence was subsequently ascertained. Defendant's deed contained covenants of seisin, of general warranty, and against encumbrances. The covenants of seisin and against encumbrances were broken as soon as the deed was made, by virtue of the existence of the encumbrance. (Note to *Huyck v. Andrews,* 3 L. R. A. 790, citing numerous authorities; *Haynie v. Investment Co.* (Tenn. Ch. App.), 39 S. W. 867.)"

In 11 Cyc. 1106, the author lays down the general rule as follows: "The existence and use of a private right of way over granted premises to which they were subject at the time of the conveyance is a breach of the covenant of warranty."

We think, therefore, that under the authorities there is a

clear distinction between the case now under consideration
and the case of *Schurger v. Moorman,* and that in the cases
in which it is held that a public highway is not an encum-
brance, such decisions have so held by reason of the peculiar
nature of the highway easements, or the understanding be-
tween the parties with reference to the same, and that the
courts have only gone to the extent of holding that even a
public highway is not an encumbrance, except in such cases
where the public highway is of such a character as to pub-
licly give notice of its public character and use, and because
of such public character the purchaser deals with the prop-
erty recognizing that an easement has been created across or
over such land. The distinction is apparent, therefore, be-
tween this case and the Schurger-Moorman case and the
cases cited in the latter case. We think, under the rule of
law as announced, and the authorities, that the existence of
the easement as described in the deed was a breach of the
covenant against encumbrances as provided for in the contract
for exchange, and that the respondent was not compelled to
accept the deed tendered by reason of the reservation con-
tained in such deed.

It is also contended by appellant that the trial court erred
in refusing evidence offered by the appellant showing oral
conversations entered into between the appellant and respond-
ent in which the appellant called the attention of the re-
spondent to the right of way now being considered, and its
use, and showing the existence of such right of way, and full
knowledge of the respondent of the same and the use made
of it. In *Eller v. Moore, supra,* the supreme court of New
York enters into a very thorough discussion of this question
and says:

"It is claimed, however, by the defendant, that the exist-
ence of this easement was apparent, and that the plaintiff had
full notice thereof when he purchased, and that, therefore, he
cannot recover in this action. The record shows that the
plaintiff knew when he purchased that there was a traveled
way across the lot from Brown's land to the highway. It
was also apparent to him that Brown had no other way out

from his premises. But it does not appear that he knew that Brown had any conveyance of such a right of way, or what his right or title thereto was, if he had any whatever. From the mere user, it would not appear but that Brown used it under a license that might be revoked at any time by the owner of the premises over which it passed. It can hardly be said, therefore, that the plaintiff must be deemed to have purchased the premises knowing of the easement which it is now conceded Brown then had. But, even if he had knowl- edge of the existence of that easement, it would seem that such fact furnishes no defense to this action. It was squarely held in *Huyck v. Andrews,* above cited, that knowledge of the existence of an easement upon the premises purchased, except that of a public highway opened and in use, did not furnish a defense to an action upon a covenant against encumbrances. The reason for such holding is therein given, at page 90, 113 N. Y., page 438, 10 Am. St., page 585, 20 N. E., and page 794, 3 L. R. A., in the following language:

" 'We think that the safer rule is to hold that the cove- nants in a deed protect the grantee against every adverse right, interest, or dominion over the land, and that he may rely upon them for his security. If open, visible and notori- ous easements are to be excepted from the operation of cove- nants, it should be the duty of the grantor to except them, and the burden should not be cast upon the grantee to show that he was not aware of them. The security of titles de- mands that a grant made without fraud or mutual mistake shall bind the grantor according to its written terms. It should not be incumbent upon the grantee to take special and particular covenants against visible and apparent defects in the title or encumbrances upon the land, but it should be incumbent upon the grantor, if he does not intend to covenant against such defects and encumbrances, to except them from the operation of his covenant.'

" . . . . The covenantee has the same right to rely upon the one covenant as the other, and, when he has proven a breach of either, he should no more be called upon to show that he was not aware of the existence of the easement in the

one case than in the other. If there is an outstanding mortgage upon premises, of which the grantee knows when he takes a conveyance of them, we do not presume that a covenant to warrant and defend their possession is not operative to protect him against the mortgage because he had such knowledge of it. We rather presume that he exacted the covenant in order to be protected against that very mortgage. And so with all easements that the grantee may know are existing as to the property.''

The general rule thus announced has been modified to a certain extent by the case of *Schurger v. Moorman*, but only to the extent of easements or rights of way granted or created over or across land to be conveyed, and where such easements are open, visible and notorious. But where the easement is a private right of way, and its general nature and character are not open, visible and notorious, or the rights under the easement are not clearly and fully disclosed to the purchaser, it will not be presumed that when the respondent purchased said property he did so with knowledge of the particular easement claimed or reserved in the conveyance, and especially of such as is disclosed in the deed tendered in this case.

It will be observed that these conversations occurred along about the 20th day of May, 1909. This was after the first contract was made and before the contract of May 21st and the letter of June 1st were entered into, and are presumed to have been merged in the writings made between the parties after such time. It is a rule of law well recognized by this court that conversations and agreements between the contracting parties prior to or contemporaneous with the signing of the written contract, and relating to the same subject matter contained in the contract, are presumed to be merged in the final written contract. (*Jacobs v. Shenon*, 3 Ida. 274, 29 Pac. 44; *First Nat. Bank v. Bews*, 5 Ida. 678, 51 Pac. 777; *Tyson v. Neill*, 8 Ida. 603, 70 Pac. 790; *Idaho Fruit Land Co., Ltd., v. Great Western Beet Sugar Co.*, 18 Ida. 1, 107 Pac. 989.)

In the case of *Lloyd v. Farrell*, 48 Pa. 73, 86 Am. Dec. 563, the supreme court of Pennsylvania, in discussing this ques-

tion, held: "Where the vendor contracted by the articles of agreement to convey the land in fee simple clear of all encumbrances, parol testimony that at the time of the execution of the agreement the understanding was that the vendee should take whatever title the vendor had at his own risk was held inadmissible to contradict the written instrument, and incompetent to destroy its covenants."

It is also urged upon this appeal that the respondent, by going into possession of the California property and making slight improvements and arranging for future improvement of the property, is estopped from making the claim that the appellant had not fully complied with all the terms and conditions of the contract on his part. This claim of estoppel cannot be recognized in this case. Prior to the time the respondent went to California, in May, 1909, he had been a resident of Idaho, and had not seen or made any examination whatever of the lands he was to receive in exchange for his Idaho lands. He was placed in possession by the appellant, and about such time the agreement of May 21, 1909, was executed, and in this agreement it was provided, "I am to give him a clear title to this property and to take care of the mortgage on it myself." Here was a guaranty of clear title, and shows very clearly that at the time he went into possession he did not waive his right to insist upon having a clear deed to the property, and on June 1st he signed the paper heretofore referred to and thereby acknowledged that the final papers in the trade had not yet been executed, but that the trade was made as shown in another set of papers, and would be signed as soon as the full details could be arranged. Thus this latter paper clearly shows that final arrangements between the parties were to be evidenced by proper deeds of conveyance for the respective pieces of property; and this paper also refers to another set of papers, evidently referring to the previous writings entered into between these parties. It is clear that the respondent's taking possession of the California ranch was in contemplation of receiving a deed to be made in accordance with the contract entered into by the appellant and the respondent, and that such deed should con-

vey to respondent a clear title to the property, free from encumbrances. There is nothing to indicate any intention on the part of respondent to take the property with any encumbrance, either by reason of the private easement reserved in the deed tendered or any other encumbrance; and there is nothing to show any acts which would constitute an estoppel or deny him the right to stand upon his contract. It was the duty of the appellant to make the title good, and the respondent had a right to depend upon the contract providing for a clear title, and his going into possession in no way waived his rights under the contract or prevented him from insisting upon its terms being kept by the appellant; and when the appellant failed to make a deed in accordance with the contract, he had a perfect right to rescind the contract and to refuse a conveyance of the property.

In the case of *Dunn v. Mills*, 70 Kan. 656, 3 Ann. Cas. 363, 79 Pac. 146, the supreme court of Kansas said: "The remedy of the purchaser . . . . , where the title of the vendor fails, or he is unable to make conveyance as stipulated by the contract, is to rescind the contract, or offer to, and to restore the possession, in which case he may recover the purchase money advanced and the interest, together with the value of his improvements, deducting therefrom such sum as the use of the premises may have reasonably been worth; and, if necessary for his protection, the court will also provide by the judgment that the possession be not surrendered until the amount so recovered shall have been paid or otherwise secured to his satisfaction." (*Taft v. Kessel*, 16 Wis. 291 (273); *Walton v. McKinney*, 11 Ariz. 385, 94 Pac. 1122; *Riley v. Allen*, 71 Kan. 625, 81 Pac. 186; *Page v. Greeley*, 75 Ill. 400; *Benset v. Gray*, 80 N. Y. 517.)

At the trial, and as part of appellant's evidence, counsel for appellant tendered a deed to the California property, omitting the reservation of the easement contained in the former deed, and asked that it be received in evidence, and that the respondent be required to accept the same in compliance with the contract made between the parties. This was after the respondent rescinded the contract and had returned

and taken possession of the property in Idaho which he had agreed to convey, and it was after the appellant had failed to keep his part of the contract for exchange. The mere fact that the deed was tendered, without any reservation of the easement described in the former deed, did not remove the easement or make a clear title to said property. If the easement existed in fact, and was an encumbrance upon the estate of Newmyer, he could not destroy such easement or remove such encumbrance by making a straight warranty deed, and the deed would not have made a title of the kind and character described in the contract.

We know of no rule of law or any principle of right or justice which would require him at that time to accept such a conveyance.

We find no error in the record and the judgment is *affirmed.* Costs awarded to respondent.

Sullivan and Ailshie, JJ., concur.